ELISHA W. SHAW *vs.* GEORGE H. WILSHIRE.

Somerset, 1874.—February 14, 1876.

*Mortgage.   Sale.*

Any written instrument, whereby the title of personal property is conveyed to a creditor of the owner for the purpose of securing payment of a debt of more than thirty dollars, designed and intended by the parties to it to operate as a mortgage, must be recorded in pursuance of the statute, (R. S., c. 91, § 1,) whether the condition thereof, as arranged and understood between the parties, is or is not expressed therein, in order to make it valid, as against any person except the parties thereto, unless the possession of the property conveyed is delivered to, and retained by, the mortgagee.

If the intention of the parties that the instrument shall operate as a mortgage, is declared or conceded, it brings the instrument within the purview of the statute requiring such mortgages to be recorded, however imperfect it may be in its form.

Ordinarily a mere receipted bill of parcels or bill of sale, in which no condition is expressed, but which the vendee named therein receives solely for the purpose of securing a debt due from the vendor, will be regarded as evidence of a pledge, of which the pledgee must retain possession in order

to make it available against an attaching creditor or subsequent *bona fide* purchaser.

In either view, if not recorded, it cannot be valid against a *bona fide* purchaser from the owner in possession.

ON EXCEPTIONS.

REPLEVIN for one black horse, two bay colts, one ox-cart and fixtures, one single harness, one single sleigh. Writ dated November 19, 1872. The defendant pleaded the general issue, with brief statement denying the plaintiff's title to all except the black horse, alleging title to the harness in himself, and title to the colts, ox-cart and sleigh, in one Archibald Linn.

The plaintiff introduced the following writing:

HARTLAND, September, 20, 1871.

      *       *       *       *       *       *       *

This day sold and delivered to Elisha W. Shaw, the following named personal property, to wit:

| | |
|---|---:|
| Three yearling colts, same raised by me, . . . | $200. |
| One single sleigh, . . . . . . . | 75. |
| Three single harnesses, . . . . . . | 65. |
| One set cart wheels and fixtures, . . . . | 35. |

Received pay,

GEORGE H. WILSHIRE.

Witness to delivery,

ARNOLD PALMER.

Which sale included other articles, amounting in all to $1975.

The plaintiff then offered evidence, tending to show that at the time of this sale, September 20, 1871, he held a note of $2719.50 against the defendant, given December 5, 1870, upon which one Arnold Palmer was surety, and another note of $410 against the defendant and Palmer; that this sale was intended as security for the defendant's indebtedness to the plaintiff, and as security to Palmer against his liability as surety upon the note of $2719.50; that the property was delivered by the defendant to said Palmer, as agent for the plaintiff; that it was not taken away, but was permitted by the plaintiff to remain in the defendant's possession upon the following agreement; that the property was to be sold, that whenever the defendant found a purchaser for any part of it, he was to notify the plaintiff, who would take the pay, give a title

to the property, and apply the proceeds upon the defendant's indebtedness to him, where Palmer was holden; but that the defendant was not to sell any of the property without permission of the plaintiff.

The plaintiff testified that he never agreed to take the property at the prices named in the bill of sale, and that no price was ever agreed on; that the defendant's notes not having been paid on November, 1872, he demanded of the defendant the property replevied, and the defendant refused to give it up; that the property was then in the possession of the defendant; and it was testified that the sleigh was taken from his premises by the officer who served the writ on November 20, 1872; and that the ox-cart was at one Bradbury's, to whom Wilshire had lent it.

The defendant introduced evidence tending to show that on October 9, 1872, he sold and delivered the colts, ox-cart, and sleigh, to said Linn. That Linn did not know of the sale to the plaintiff, that Linn paid him $75 in money towards the property, and gave him credit for the balance of the purchase money, upon a book account which he owed Linn; that the sale to Linn was without the knowledge or assent of the plaintiff or of Palmer.

It was in testimony and was uncontradicted that, after the sale to Linn, the two colts were taken and placed in Linn's pasture, that they escaped therefrom, and were again returned to the pasture.

The officer, who served the replevin writ, testified that he found the colts in the highway, running at large near Wilshire's house, ten or fifteen rods from the house.

It appeared in testimony, that Linn was a neighbor of the defendant.

The presiding judge, among other instructions, gave the jury the following:

If the sale to the plaintiff was an absolute sale to pay a valid debt, it would be valid without recording. But if the plaintiff held his notes and claims, and took this conveyance as security, it would fall under the statute as to conveyances of property by mortgage, and must be recorded, in order to be valid as against anybody but the seller; that it would not be good against the

creditors of defendant, unless so recorded, nor against subsequent purchasers, in good faith, for value; and if any of the property was sold and delivered to Linn in good faith, for value, then Linn would have a right to hold the property, notwithstanding the conveyance to Shaw.

The plaintiff's counsel requested the court to give the following instructions:

I. If the sale of September 20, 1871, was made in good faith, to secure an actual indebtedness from the defendant to the plaintiff for money lent, and also to secure Palmer, who was a surety upon the note given by the defendant to the plaintiff, and there was a delivery of the property under the sale, then the sale would be valid against a subsequent purchaser, for value, without notice of the sale, although the bill of sale was not recorded, and the property was permitted to remain in the possession of the defendant.

II. That if the sale was made in good faith, for the purposes stated in the preceding request, and there was a delivery by the defendant to the plaintiff, of the property under the sale, and at the time it was agreed by the parties that the property should not be disposed of by the defendant, without the knowledge and assent of the plaintiff, and that when sold, the proceeds should be applied in payment of such indebtedness, from the defendant to the plaintiff, then the sale would be good against a subsequent purchaser, for value, who bought the property of the defendant, without the knowledge or assent of the plaintiff, although he had no notice of the sale to the plaintiff, and although the property was permitted by the plaintiff to remain in the possession of the defendant.

The presiding judge refused to give the requested instructions, and gave the following reasons therefor:

Because it appears by the statements of the plaintiff himself, it was not an absolute sale. He says he did not take the property as payment of the debt; he still held his claim, it did not amount to a sale of the property, but a conveyance for the security of a debt.

The jury returned a verdict as follows:

"That defendant did take the black horse and single harness, that the title to the same was in the plaintiff, and assessed dam-

ages for the plaintiff in the sum of one dollar. That defendant did not take the two bay colts, the ox-cart and fixtures, and the single sleigh, and that the title to them was in Archibald Linn."

To the foregoing instructions and refusals to instruct as requested, the plaintiff excepted.

*G. W. Whitney*, for the plaintiff.

There was no writing to record but the bill of sale. In form it was unconditional, and placing it upon record would give no notice that the sale was conditional, or that the defendant had any right to redeem the property.

The plaintiff could not put upon record the contemporaneous parol agreement.

Yet the written and the unwritten must be considered together in order to determine whether the conveyance was for security.

An unwritten agreement is no mortgage; nor is it such a defeasance as will change an unconditional bill of sale and make of it a mortgage.

In order to be a mortgage within the statute, it must be so in form. Enough must be put in writing to show that the sale is upon condition.

To the point that this bill of sale need not be recorded, the counsel cited *Knight* v. *Nichols*, 34 Maine, 208 ; and *Gushee* v. *Robinson*, 40 Maine, 412.

*S. D. Lindsey*, for the defendant.

The controversy here is really between the plaintiff and Archibald Linn.

The jury found that Linn purchased the two bay colts, the ox-cart and fixtures and the single sleigh in good faith and for value, and that this property was delivered to him.

The plaintiff claims title to this property by virtue of a bill of sale, absolute in form, unrecorded, and in fact given to secure a pre-existing debt.

The possession of the property remained in the defendant. There was no consideration paid by the plaintiff, and the instrument he took cannot operate as an absolute sale or transfer of the

property. As against creditors and subsequent purchasers, in good faith for value, it was fraudulent and void. *Whitaker* v. *Sumner*, 20 Pick., 399.

The sale to Shaw by defendant under these circumstances, must be treated as a pledge. *Whitaker* v. *Sumner*, 20 Pick., 399. *Hazard* v. *Loring*, 10 Cush., 267. *Walker* v. *Staples*, 5 Allen, 34.

To constitute a pledge, the pledgee must take possession ; and to preserve it, he must retain possession. *Homes* v. *Crane*, 2 Pick., 607. *Bonsey* v. *Amee*, 8 Pick., 236. *Beeman* v. *Lawton*, 37 Maine, 543.

The property was not retained by Shaw. On the other hand, the possession of Wilshire was absolute and unqualified.

The case of *Walker* v. *Staples*, 5 Allen, 34, is analogous in almost every particular, and appears decisive of this case.

The refusal to give the requested instructions seems to be fully sustained by the authorities cited.

BARROWS, J. The legislature of this state have endeavored, by various enactments, to prevent the perpetration of those frauds upon creditors and *bona fide* purchasers which are liable to be practiced if the owner of personal property, still retaining the possession of it, is permitted to encumber it with mortgages or liens of which no public notice is given.

In R. S., c. 91, § 1, it is declared that "no mortgage of personal property, to secure payment of more than thirty dollars, shall be valid against any other person than the parties thereto, unless possession of such property is delivered to and retained by the mortgagee, or the mortgage is recorded by the clerk of the town or plantation, organized for any purpose, in which the mortgager resides."

Careful provision as to the place of record is made for cases in which all or any of the mortgagers reside without the state, or in an unorganized place within it, or where the mortgage is made by a corporation.

After it became apparent that, in place of taking mortgages to secure the purchase money, sellers of chattels were making a practice of stipulating in the contract of sale that the property should remain theirs until the price was paid, and the court had

held in *Sawyer* v. *Fisher*, 32 Maine, 28, and *Gushee* v. *Robinson*, 40 Maine, 412, that the statute did not extend to liens thus created because there was no mortgage from the debtor and no unconditional transfer of title from the vendor, the legislature again intervened with the requirement now embodied in R. S., c. 111, § 5, invalidating every such agreement where a note is given for the purchase money, unless it is made and signed as part of the note and unless recorded like mortgages of personal property, when such note exceeds thirty dollars.

Various other enactments show the design of the legislature that there shall be public notice of all such incumbrances or liens if they are to be maintained against any except the parties creating them. See the provisions for recording attachments of personal property too cumbrous to be moved, as well as those of real estate, and for the record of leases for terms longer than seven years. R. S., c. 81, § 24, c. 73, § 8.

We do not feel at liberty to permit transactions which are confessedly designed by the parties to operate only as mortgages and to which they intend to give no other force or effect, when not recorded in conformity with the requirements of the statute, to take effect as absolute conveyances as against subsequent *bona fide* purchasers, merely because their form only partially represents their acknowledged purpose.

Unless the conveyance to the plaintiff can take effect as a mortgage in accordance with the design of the parties to it, it cannot be held operative to pass the title at all.

It is only by recognizing its true character as a mortgage or as evidence of a pledge that one of these anomalous instruments can be regarded as valid when it comes in conflict with the rights of those who have paid their money for the property to the general owner in possession.

The transfer and delivery of this property to the plaintiff and the receipted bill of parcels which accompanied it were not designed to constitute a sale by the parties to it. The plaintiff himself so expressly testifies. It was meant only to take effect as security for an indebtment that was not discharged or regarded as paid *pro tanto*.

Supposing it to have been done in perfect good faith, the transaction constitutes either an equitable mortgage, or a pledge of the property in question, and nothing more. If an equitable mortgage, we are brought to the conclusion that it is within the requirements of the statute and should be recorded, in order to make it valid as against a subsequent *bona fide* purchaser.

In construing the statute which requires all mortgages of personal property exceeding thirty dollars to be recorded, it is the substance, intent, design and effect of the instrument, and not its form merely, which is to be regarded.

We cannot sanction what we think would amount to a palpable evasion of the statute by giving the effect of a duly recorded mortgage to an unrecorded instrument which the grantee himself declares was intended for security only. We think it would open a wide door to fraud and deprive *bona fide* purchasers of the protection which the statute was designed to afford.

The only decision to which our attention has been called, which sets form above substance to this extent, *Knight* v. *Nichols*, 34 Maine, 209, must be considered as overruled on this point. We see no reason to discriminate between an equitable mortgage and one in which the condition is more fully expressed. Upon the plaintiff's own version it was at the best, but a mortgage, and the statute requires that all mortgages of that amount shall be recorded.

There is another view of the case which brings us to the same result upon the familiar principle, that even if the presiding judge was in error, in treating the document under which the plaintiff claimed title, as a mortgage, and thereupon holding that a record was necessary to make it available against Winn, the error was an immaterial one, because upon any legal construction of the instrument the plaintiff could be in no better condition.

There is a class of cases in which it has been held that a receipted bill of parcels, accompanied with a formal delivery and designed to constitute security for a debt, amounts only to a pledge of the property, of which the pledgee must retain the possession if he would make good his right to it against *bona fide* purchasers or creditors of the party who pledges the property to him. Thus re-

garded, the case falls within the doctrine laid down by our own court in *Eastman* v. *Avery*, 23 Maine, 248, and *Beeman* v. *Lawton*, 37 Maine, 543 ; and that of Massachusetts, *Whitaker* v. *Sumner*, 20 Pick., 399 ; *Hazard* v. *Loring*, 10 Cush., 267, and *Walker* v. *Staples*, 5 Allen, 34.

If the bill of parcels which the plaintiff received, coupled with the evidence as to the purpose for which it was made and as to the delivery of the property, be deemed to amount to proof of a pledge only and not a mortgage, then the conceded facts respecting the permission given by the plaintiff for the return of the property to the possession of the pledgeor would work the destruction of his rights as effectually as the ruling complained of.

In neither view of the case, can the plaintiff's claim to hold the property as security be regarded as available against that of Winn.

Various *dicta* in cases of foreign attachment, which at first glance might seem to be in conflict with our conclusion here, will be found to be inapplicable because of the different nature of the questions under consideration.               *Exceptions overruled.*

WALTON, DICKERSON, DANFORTH, VIRGIN, PETERS and LIBBEY, JJ., concurred.