HENRY H. PUTNAM *vs.* CHARLES M. WHITE and another.

Penobscot. Opinion December 30, 1884.

*Lumbering permits. Assignment. Mortgage. Judicial notice.*

A written permit, to cut and remove timber from land, running to two permittees, may be wholly assigned by one of them, if he is authorized to act and does act for both, although he signs the assignment by his own individual name, and the assignment does not itself disclose that he is acting for or upon the authority of the other permittee. The authority of the one to act for both may be shown by oral evidence.

An assignment, in a mortgage form, of a permit to cut and remove timber, need not be recorded as a chattel mortgage, as far as cuttings are concerned which are made after the assignment; *aliter*, as to cuttings made before the assignment.

The same rule applies, where the permit extends to hemlock trees that have been already cut down and left, with the bark peeled therefrom, promiscuously upon the land.

The statutory requirement that chattel mortgages shall be recorded, applies to equitable as well as to legal mortgages.

The court will take judicial notice of the fact that the three customary surveys of logs upon the waters of the Penobscot river, namely, the woods-scale, boom-scale, and sale-scale below the boom, widely differ from one another.

ON MOTION to set aside the verdict, and on exceptions.

Trover for certain mill logs. The plea was the general issue and tender of one hundred and fifty dollars. The verdict was for three hundred thirty-two dollars and thirty-one cents.

*A. McNichol,* for the plaintiff.

*Davis and Bailey,* for the defendants upon the questions presented by the exceptions and considered in the opinion, contended that the assignment of the permit constituted a chattel mortgage within the meaning of the recording act. R. S., c. 91, § 1. Any instrument intended to operate as a mortgage in law or in equity is within the recording act. *Shaw* v. *Wilshire,* 65 Maine, 485.

If a transaction resolve itself into a security whatever may be its form and whatever name the parties may choose to give it, it is in equity a mortgage. *Flagg* v. *Mann,* 2 Sum. 533 ; *Stinchfield* v. *Milliken,* 71 Maine, 570 ; Jones, Chattel Mort. § 17 ; *Parks* v. *Hall,* 2 Pick. 206 ; *Smith* v. *Beattie,* 31 N. Y. 542 ; *Leitch* v. *Hollister,* 4 Comst. 211 ; *Eaton* v. *Whiting,* 3 Pick. 490 ; *McClelland* v. *Remsen,* 36 Barb. 622 ; *Garland* v. *Plummer,* 72 Maine, 397.

By R. S., c. 73, § 1, all peeled logs lying where cut down are personal property. The permit, therefore, as to them operated as a grant. *Wood* v. *Leadbitter,* 13 M. & W. 843 ; and the assignment to the plaintiff was as to such logs, at least, a mortgage, and as to such was of no effect against the defendants for want of record. And why the after-cut lumber would not come within its terms as fast as severed from the soil is not altogether clear reasoning from the analogies of the law, or even looking at the adjudged cases. See *Claflin* v. *Carpenter,* 4 Met.

580 ; *Douglas* v. *Shumway*, 13 Gray, 498 ; *Sheldon* v. *Conner*, 48 Maine, 584 ; *Sawyer* v. *Gerrish*, 70 Maine, 254.

This permit was given to two persons. They were joint owners. The assignment was evidently written for both to sign, but only one did sign. It carried at most only his interest and the assignee thereupon became part owner with the other original permittee. Where only one joint owner of chattels sues for their conversion, he can recover as damages only the value of his interest. 1 Chitty, Pl. (16th ed.) 75 ; *Putney* v. *Lapham*, 10 Cush. 234.

Nor should a subsequent agreement that it should be considered the act of both, change the character of the transaction. Such an agreement could only be of use as an estoppel, the title would continue as before. *Keables* v. *Christie*, 47 Mich. 594 ; *Clark* v. *Houghton*, 12 Gray, 38 ; *Patch* v. *Wheatland*, 8 Allen, 102.

The books maintain a wide difference between what are termed commercial partnerships and ordinary partnerships, such as are formed for mining, farming, logging and the like. And one who relies upon a contract made by one member only of a non-commercial partnership, must show affirmatively that such partner had power to contract for his associates. Such power is implied in the case of commercial partnerships only. Parsons, Part. * 99 and cases cited.

PETERS, C. J. A written permit was granted by proprietors of land to John C. Foss and B. Colbath, for a lumbering operation. The permit was assigned to the plaintiff in the following words :

" For and in consideration of supplies furnished and to be furnished by H. H. Putnam to carry on the lumbering business under the within permit, we hereby assign and deliver to the said Putnam all our right, title and interest to the within permit, and our interest to the logs that may be cut under the said permit to the said Putnam, but after the said Putnam shall sell the logs or lumber aforesaid and take out his supply bill and paid the stumpage, driving and other lien claims, he shall pay the balance to us in cash. John C. Foss."

" Dated at Danforth, this Dec. 10, 1881. "

The defendants claim to have purchased the logs cut under the permit of Foss and Colbath, and, converting them to their use, the plaintiff, the assignee, sues for the logs.

The defendants contend that if the assignment prevails against their claim, it can be for only an undivided half, because Colbath, a half owner, did not sign the assignment. The assignment is in the plural number. The words " we assign, " " our right, " " balance to us, " are contained in it. *Prima facie*, or literally construed, the assignment transfers only an undivided half of the permit. The supposition would be that it was drawn for two to sign, and that one refused or neglected to sign.

The plaintiff, however, undertook to supply the apparent insufficiency of the assignment by oral evidence, upon which the judge ruled that, if one signed for both and was authorized to do so, the assignment would have the same effect as if signed by both. This is in accordance with the modern doctrine, applicable to business papers generally, not including sealed instruments or negotiable bills and notes. The law, in many cases, admits evidence to show the real and actual capacity in which persons have set their names to written contracts. Had the words, " For self and Colbath, " been added to Foss' name, the assignment would have been complete. They may be supplied by oral proof. *Higgins* v. *Senior*, 8 M. & W. 834; *Huntington* v. *Knox*, 7 Cush. 371. It is competent to show that contracting parties were agents of other persons, so as to give the benefit of the contract to, or charge its liabilities upon, the unnamed principal. An undisclosed principal may be shown to be the real party in a transaction in which the agent is the only ostensible person. 1 Whar. Con. § 202, and numerous cases in note. *Lerned* v. *Johns*, 9 Allen, 419; *Lamson* v. *Russell*, 112 Mass. 387; *Cushing* v. *Rice*, 46 Maine, 303; *Coleman* v. *Bank*, 53 N. Y. 393; *Hutton* v. *Bullock*, L. R. 9 Q. B. 572. We think the present case falls within the circle of the doctrine marked out by the authorities. It must be borne in mind that this is not a case where a third party has been misled by the form of assignment. There is no estoppel. The defendants did not purchase the logs on account of the

manner of executing the assignment. The case of *Beckman* v. *Drake*, 9 M. & W. 79, is almost this case. There A and B and C were partners. An agreement with D, relative to partnership matters, was signed by A and B in their individual names. It was held that, upon the principles of agency, A and B signed for themselves and C.

The defendants contended that the assignment is not valid against them, because it is a chattel mortgage and not recorded. This proposition is divisible into two parts or questions. First, should an assignment (of a permit) in a conditional or mortgage form, be recorded, when the cuttings under the permit are made after the assignment; and, secondly, should such an assignment be recorded when the cuttings have been in part before the assignment. In this case some logs were cut and hauled before and some after the assignment.

Where assignments are made before the operation they need not be recorded. In other words, so far as logs are concerned which are cut under a permit after its assignment, such assignment, though in mortgage form, need not be recorded. The general practice has been not to record them. It would entail a burden if required. The common form of a lumbering permit, with an assignment, (and both should be recorded if either,) would make a very extended record. Surely, a conditional assignment of a chose in action need not be recorded. It would seem strange indeed, to see upon the registry of chattel mortgages a transfer of a writ, or of an execution, or of an account or note, or of any mere contract. But a permit to operate on land is nothing but a contract. It conveys no property while it is merely executory. It is no more than a license. It cannot be attached. It cannot be assigned even without an express or implied consent of the permitter. *Emerson* v. *Fisk*, 6 Maine, 200. It is a matter of personal trust and confidence. It confers authority to do certain acts upon land, but it passes no interest in the land itself. The trees to be cut are a part of the land until severed. It certainly is an unwarrantable stretch of legal principles to say that an assignment of such an instrument conveys any personal chattels. We express our views

emphatically, inasmuch as the question is one of such practical importance in this state that there should not be a spot of doubt upon it. Nor do we see any need of such a requirement as recording an assignment of a license. Lumbering operations are bulky in their nature — cannot be concealed — and it is easy to see who are conducting them.

The counsel for the defendants in his able brief, admits the law to be as viewed by us, but thinks there may be a lingering doubt about it, inasmuch as the case of *Sheldon* v. *Conner*, 48 Maine, 584, was decided in that way by a divided court. That case had its peculiarities which carried the attention of the court away from the precise question which we now have in hand. The court got into a discussion over the issue whether a right to cut timber under a permit may be sufficient to uphold a mortgage of timber before it is cut, the opinions delivered going into the old refinements as to what extent a person may sell or mortgage property having no or only a potential existence. The easier solution of the facts there presented might have been to decide whether under the evidence adduced the mortgage was or not an assignment of the permit. It did not in terms undertake to assign it. There are other cases, however, in accord with the doctrine of the present opinion, quite directly sustaining the same view. *Fiske* v. *Small*, 25 Maine, 453; *Sawyer* v. *Wilson*, 61 Maine, 529.

The second branch of the question is whether an assignment, which is not a sale, but a mortgage, of logs already cut and hauled, need be recorded as against the creditors of the assignor or his subsequent vendees. We think it should be, unless possession is taken and kept by the mortgagee. If during a lumbering operation a permittee mortgages his permit, by assignment, and a portion of the timber has been then cut and hauled, as to that portion, the mortgage needs to be recorded, in order to be effectual against third parties; while as to the lumber afterwards cut, a registration of the mortgage is not necessary. As to the timber already cut and hauled the license is executed, while as to that to be cut it continues to be executory. Past cuttings are personal property. Future cuttings may become personal

property. To this extent does the decision go in the case of *Garland* v. *Plummer*, 72 Maine, 397. In that case the lumber had apparently been cut and hauled when the permit was mortgaged.

It may not be amiss to say that when a permit is to be mortgaged after a lumbering operation has been partially completed, it can be better executed in two parts then in any other way. The logs already cut may be separately mortgaged, in which case the permit need not be placed upon the record, and the permit can also be conditionally assigned; the mortgage to be recorded, and the assignment not to be.

Among the complications of this case another question arises: The permittees were required to cut into logs and haul away a quantity of hemlock trees which had been previously cut down and left upon the ground after the bark was peeled therefrom. The defendants contend that as to this lumber the assignment should be recorded, although the trees were cut into logs and removed after the assignment. We do not think so. The same principle applies to the fallen as to the standing timber. The same right is extended and the same conditions annexed. The permittees did not cut down the hemlock trees — nor were they their property until the license to operate upon them became executed.

Another question will have to be met at another trial: The plaintiff contends that the assignment is not a mortgage but a sale. In a legal view, the distinction may be a nice one. But we think in view of the facts disclosed by the evidence, if not a legal, it is an equitable, mortgage. Must an equitable mortgage be recorded, or does the statutory requirement apply only to legal mortgages, is the question. We think it should be regarded as applying to both classes of mortgages. Such was, no doubt the idea of the court in *Shaw* v. *Wilshire*, 65 Maine, 485. BARROWS, J., there says: "We see no reason to discriminate between an equitable mortgage and one in which the condition is more fully expressed." If equitable mortgages are not to have the privilege of a registration, we do not see how such mortgages can be very available or even valid, unless a delivery is

taken and kept. It may be said that a mortgage in the form of absolute sale gives no indication of the nature of the condition annexed. But many legal mortgages do not upon their face fully disclose the facts. The very fact however, that an instrument in the form of absolute sale is recorded, is a notice that some condition is annexed. What the condition is may be ascertained under the statutory modes provided for the purpose. A sale and a separate written defeasance given back constitute even a legal mortgage. But in such case the vendee has no means of requiring the separate defeasance to be recorded. We make no distinction of the kind, set up by the plaintiff, in the matter of the registration of deeds of real estate when regarded as equitable mortgages.

We think the damages recovered were excessive. We need not go into particulars. Suffice it to say, that the evidence is convincing that either the plaintiff should not recover at all, or that he should recover less than the amount of the verdict rendered. It is clearly proved by competent witnesses that the three customary surveys upon the Penobscot waters are widely different things. The same is common knowledge as well. RICE, J., in *Cushman* v. *Holyoke*, 34 Maine, at p. 292. There is wide difference between selling logs at the "woods-scale," or "boom-scale," or upon a "scale below the boom," that is, after the logs have been driven to market. The most trustworthy scale is the latter. The other scales have their uses. The jury evidently heeded not the differences, when they could and should have.

*Motion sustained.*

DANFORTH, VIRGIN, EMERY, FOSTER and HASKELL, JJ., concurred.