† CHAPIN & al. *versus* CRAM.

It is not essential to the validity of a mortgage of personal property, that a schedule of the goods therein referred to, but not made a part of it, should be recorded.

A mortgage of a stock of goods, containing a clause that goods which might thereafter be purchased by the mortgager, to replace those enumerated, as also *all additions to the stock*, should be held for the payment of the notes recited, will not transfer to the mortgagee goods afterwards purchased, and put in with the stock by the mortgager.

ON FACTS AGREED.

TROVER, to recover the value of a stock of goods.

The plaintiffs' title was derived by a mortgage from one Harford Knowles, of Nov. 3, 1853, in these words:— "All and singular, the drugs, medicines, goods, wares, merchandize, perfumery, fixtures and apparatus in store No. 22, west market place, in said Bangor, and in the cellar under

said store, being the store and cellar now occupied by me," &c. This mortgage was recorded on Nov. 5, of the same year.

Defendant claimed title to the same goods, under a mortgage from the same Knowles, dated May 19, 1853, in these words:— "All and singular, the drugs, medicines, goods, wares, merchandize and fixtures now in the store No. 22, west market place, in said Bangor, lately occupied by H. B. Hall, a schedule of which, dated May 2, 1853, of forty pages, in the hands of said Cram, is referred to for a particular description and enumeration of said drugs, medicines, &c. It is understood and agreed, that all drugs, medicines, goods, wares, merchandize and fixtures of every description, which may be hereafter purchased to replace any of them now in said store, shall be held for the payment of the sums hereafter named, in the same manner as those now in said store, as also all additions to said stock, to have and to hold to said Gilman Cram, and his personal representatives forever."

This mortgage was recorded on May 20, 1853, but no schedule therein referred to.

Both mortgages covered the same stock, with the exception that subsequently to defendant's mortgage, and prior to plaintiffs', Knowles purchased twenty-five dollars' worth of goods, and put into the store, which defendant took away with the entire stock, and converted to his own use.

If plaintiffs' mortgage was valid against defendant, for the whole stock, a default to be entered, and judgment for $500, if for the additional goods only, therefor, $25,00; but if, on these facts, the action was not maintainable, a nonsuit to be entered.

*Peters*, for defendant.

*Wakefield*, for plaintiffs.

TENNEY, J. — This case is essentially distinguishable from that of *Sawyer* v. *Pennell*, 19 Maine, 167. In that case, the mortgage was of "all the articles, stock and merchan-

dize of every description, in the store, now occupied by me, the said Thorndike, which are set forth and specified, and particularly enumerated in *the schedule hereto annexed, which said schedule constitutes a part of this mortgage bill of sale.*" But in the mortgage given by Knowles to the defendant, dated May 19, 1853, it is of "all and singular the drugs, medicines, goods, wares, merchandize and fixtures now in store No. 22, west market place, in said Bangor, lately occupied by H. B. Hall, a schedule of which, dated May 3, 1853, of 40 pages, in the hands of said Cram, is referred to for a particular description and enumeration of said drugs and medicines." The schedule is not annexed to the mortgage, and is not declared therein to be a part of it. Without the schedule, the mortgage is as full, in the description of the goods, as those have been, which have been held valid. *Harding* v. *Coburn,* 12 Met. 333; and as full as the mortgage under which the plaintiffs claim the same property.

The reference to the schedule, in the defendant's mortgage, is a mode by which the goods could with greater facility be identified, and does not therein differ essentially, from cases in which there are references to the bills of the same goods, from those of whom the mortgagers purchased them, or to the account of stock they have taken for their own convenience, without regard to subsequent mortgages or sales; or to a bill of sale, which may have been given by a former owner, to one under whom the mortgager derived title, through several subsequent mesne conveyances. The simple reference to a written document for the purpose of affording some proof of the property mortgaged, when the same is not declared in some way to be a part of, or to be annexed or attached to that, which is really the instrument executed by the mortgager, cannot be treated as a matter required to be recorded. The cases cited for the plaintiff, that by the reference in a deed of real estate, the deed referred to becomes a material part of the description, as much as if it were copied therein, do not conflict with this

view. This manner of describing the land designed to be conveyed, is, that the premises may be clearly ascertained; and it has not been held in any case known to us, that a deed referred to, unrecorded, must be registered in order that the one making the reference should be effectual, for any other purpose, than to complete the chain of title upon the records.

The identity of goods mortgaged must generally be shown to some extent by parol evidence. If the description is of the goods in a store described, at the date of the mortgage, testimony will be required, if the fact is disputed, to show the goods, which were at the time in the store. If a bill of the goods is referred to, evidence that the bill produced, is the one which the parties had in view, must be shown, unless it is admitted.

In this case, the reference to the schedule was evidently for greater certainty, and to save the trouble of identifying by parol proof the articles, such as are usually found in a shop like the one in which these goods were kept. The schedule not being essential to the validity of the mortgage, was not required to be recorded, merely because it was referred to, without being a part of the same.

The case finds, that in the stock of goods carried away by the defendant, there were those of the value of $25, which were in the store when the mortgage was given to the plaintiffs, but were purchased by the mortgager and put into the store subsequently to the mortgage to the defendant. The plaintiff's mortgage being recorded, passed the title of the mortgager to them. This would be sufficient, till the defendant should show a superior title in himself. The mortgage to the latter provides, "that all drugs, medicines, goods, wares, merchandize and fixtures of every description, which may be hereafter purchased to replace any of those now in said store, shall be held for the payment of the sums hereafter named, in the same manner as those now in said store, as also all additions to said stock." It is quite clear, that the "additions to said stock," obtained

by the mortgager, after the execution of the mortgage to the defendant, without any further act, would confer no rights therein. *Lunn* v. *Thornton*, 1 Man. Gran. & Scott, 383; *Jones* v. *Richardson*, 10 Met. 481; *Head* v. *Goodwin*, 37 Maine, 181. To purchase such additions to the stock, the mortgage constituted no agency in the mortgager. It does not appear, that the goods received into the stock were purchased for the purpose of replacing those which had been sold; they may have been additions only; and the defendant has not a title thereto, under the evidence reported. *Defendant dafaulted.*

*Damages the sum of $25.*