WILLIAM G. HORTON *vs.* LEROY WRIGHT.

Penobscot.    Opinion July 19, 1915.

*Contract.  Mortgage.  Possession.  Record.  Replevin.  Sale.  Title.*

In an action to recover damages for false representations as to title in the exchange of horses, the horse which the plaintiff received having been subsequently taken from him on a replevin writ by virtue of a mortgage,

*Held:*

1.  That the burden of proof rested on the plaintiff to show that the title under the mortgage was superior to his own by purchase.

2.  That under R. S., Chap. 93, Sec. 1, possession of personal property mortgaged shall be delivered to and retained by the mortgagee, or the mortgage shall be recorded in the town where the mortgagor resides.

3.  That in the absence of evidence, showing one or the other of these facts, the validity of the mortgage, although recorded, is not established as against a bona fide purchaser for value without notice.

4.  That the record of the mortgage in the town of Waite did not establish its validity as against the plaintiff, because it was not shown that the mortgagor resided in that town and the mortgage itself is silent on the point.

5.  That the defendant in this suit is not bound by the judgment in the replevin suit as he was not a party thereto and was not notified of its pendency, so that he could appear and defend.

6.  That the defendant is not estopped from setting up this defense by any word or act or silence on his part.

7.  That the evidence does not establish a failure of title.

On motion for new trial by the defendant. Motion sustained. New trial granted.

This is an action for false representations in the exchange of horses. Plea, general issue. The jury rendered a verdict for plaintiff for $125 and the defendant filed a general motion for a new trial.

The case is stated in the opinion.

*W. I. Butterfield, and A. L. Blanchard,* for plaintiff.

*Morse & Cook,* for defendant.

SITTING: SAVAGE, C. J., SPEAR, CORNISH, BIRD, HALEY, PHILBROOK, JJ.

CORNISH, J. On August 20, 1912, the plaintiff exchanged horses with the defendant, the defendant delivering to the plaintiff a horse known as Moscow to which he claimed to have title.

A year later, when the plaintiff was at the Springfield Fair, one White appeared and claimed the right to take the horse from him by virtue of a mortgage existing prior to the sale, whereupon the plaintiff suggested that they see the defendant, who was also at the Fair, and lay the case before him. They found the defendant and the plaintiff explained the situation. At first the defendant "said that it was a bogus affair and he guessed anyway it wouldn't amount to anything;" whereupon the plaintiff said to the defendant, "Well, they are going to take the horse, they claim this to be good anyway, and now is the time for you to settle. If they have got a bill of sale on that horse, I bought the horse from you, and you better fix it up here." To which the defendant simply replied that they couldn't do anything with him anyway as he had been through bankruptcy. All this took place in the presence of Mr. White and his attorney who

thereupon proceeded to make out a replevin writ in the name of one J. B. Mercier as plaintiff, and took the horse away. Judgment was subsequently obtained against Horton in the replevin suit, and this action for false representations followed against Wright.

The defendant introduced no testimony and claims that the plaintiff has failed upon his own evidence to show legal liability on the defendant's part. The burden of proof rested upon the plaintiff in the first instance to show a failure of title, that is, that the horse was taken from him by one having a title under the mortgage superior to the title of his vendor Wright. The plaintiff introduced the certified copy from the records of the town of Waite, of a certain mortgage covering the horse Moscow with carriage and harness, given by Stanley Fenlason to J. B. Mercier on June 17, 1910, but there is no evidence that the mortgagor, Fenlason, resided in Waite, and the mortgage itself is silent on that point. The statute requires either that possession of personal property mortgaged shall be delivered to and retained by the mortgagee or that the mortgage shall be recorded in the town where the mortgagor resides. R. S., Chap. 93, Sec. 1. In the absence of affirmative evidence showing one or the other of these facts, the validity of the mortgage, although recorded, is not established as against a bona fide purchaser without notice. *Bither* v. *Buswell*, 51 Maine, 601; *Stirk* v. *Hamilton*, 83 Maine, 524.

True, judgment in the replevin suit was rendered for the plaintiff Mercier, who was the mortgagor, but that judgment is not binding upon Wright, as he was not a party thereto, unless he was notified of its pendency and was given an opportunity to appear and take upon himself the defense. *Davis* v. *Smith*, 79 Maine, 351. This was not done.

The plaintiff replies that the defendant is estopped from setting up this defense because of his declarations and conduct at the inception of the suit when the horse was taken away, and this is a vital issue in the case. "The doctrine of equitable estoppel is founded upon the principles of equity and justice and is applied so as to conclude a party, who by his acts or omissions intended to influence the conduct of another, when in good conscience and honest dealings he ought not to be permitted to gainsay them." *Rogers* v. *Street Railway*, 100 Maine, 86. Are the necessary elements present here? We are constrained to say that they are not. There is no evidence that Wright ever had any knowledge of the existence of this mortgage until

the interview at the Fair Grounds. So far as appears, he did not see it even then, and was ignorant as to its contents. The plaintiff testifies that a mortgage was shown to him by Waite, but whether it was the original of which the copy was introduced in evidence he is unable to state. There is no pretense that it was shown to Wright. So far as Wright's declarations are concerned, they are two; first, he guessed it was a bogus affair and wouldn't amount to anything, and second, that they couldn't do anything with him as he had been through bankruptcy. The tendency of the first remark was not to influence Horton to submit to the proceeding but on the contrary to resist it, and the second was simply the shirking of all personal responsibility by a man who thought himself immune. It is impossible to gather from what Wright said or did or failed to say or do, any attempt on his part to lead Horton into any course of conduct whatever. No advice was given and no suggestions were made. A fair interpretation of the conversation is that the plaintiff was endeavoring to persuade the defendant "to fix" the matter up,—to settle it,—which the defendant was not inclined to do. Nor is another essential element present, namely, that Horton was in fact induced to change his conduct or to place himself in a position of substantial injury by any word or act or silence of the defendant. He took his own course in his own way, and for that course he himself is responsible and not the defendant.

It is apparent therefore that the evidence at this trial failed to show that the defendant did not in fact have title at the time of the exchange, which was the very basis of the plaintiff's action and therefore the entry must be,

*Motion sustained.*
*New trial granted.*