MAC MOTOR SALES, INC.

*vs.*

NORMAN L. PATE

York.   Opinion, June 27, 1952.

*Charles A. Pomerey,*
*J. Joseph Tansey,* for Plaintiff.

*William H. Stone,*
*Edwin G. Walker,* for Defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ. (MURCHIE, C. J., THAXTER, J. concur specially in result.)

MERRILL, J. On exceptions. This action of trover for the alleged conversion of an automobile by the defendant was heard by a Justice of the Superior Court in the County of York on an agreed statement of facts, with right of exceptions reserved as to matters of law. The automobile in question was purchased by William A. Berger on November 15, *1949,* and on the same day he executed a chattel mortgage of the same to Guardian Finance Co. to secure his promissory note for $3,726.60. This chattel mortgage was duly recorded on the next day in the office of the City Clerk of Cape Elizabeth, Maine, the then residence of Berger. Possession of the automobile was retained by Berger. On November 1, *1950,* Berger *borrowed* $2,165 from the plaintiff, Mac Motor Sales, Inc. and *as security therefor,* executed a so-called "Conditional Sales Contract" herein-

after referred to as the "Contract," dated October 30, 1950, describing Mac Motor Sales, Inc. as the seller and himself as the purchaser of the automobile in question, and agreeing therein that the "title to said Chattel shall remain vested in the Seller until all amounts due hereunder are fully paid in cash,". The "Contract" further spelled out in great detail the respective rights and obligations of the parties thereunder. In addition to the "Contract," on the same day Berger executed a "Certificate to be Recorded with Town or City Clerk," hereinafter referred to as the "Certificate." This "Certificate," signed by Berger, was a statement that he had on this 30th day of October, 1950, purchased and acknowledged delivery from Mac Motor Sales, Inc. of Lewiston, therein called the seller, the automobile in question and that "Title to all of the above, together with all equipment and accessories already thereon or hereafter added, remain in Seller or assigns until the balance of $2,165.00 which I, we owe thereon, is paid and which I, we, agree to pay in full within ...... months from day of purchase, according to the tenor of an agreement and promissory note executed contemporaneously herewith." This "Certificate" was recorded in the office of the City Clerk of Portland, Maine, on November 1, 1950, that city then being the residence of Berger. At the time the plaintiff made the loan of $2,165 to Berger, it had no actual knowledge of the existence of the aforesaid Guardian Finance Co. mortgage.

On February 20, 1951, the defendant purchased the automobile in question from Berger and took delivery thereof. The defendant paid for the car with two checks, one payable to Berger in the sum of $929, and the other payable to Guardian Finance Co. in the sum of $1,871. Berger delivered the check for $1,871 to Guardian Finance Co. The check was in excess of the amount due on its mortgage, and Guardian Finance Co. returned to Berger the sum of $72.12. At the time the defendant purchased the car of Berger it

was in Berger's possession and had been ever since its purchase by him. Furthermore, the defendant had no knowledge of Berger's indebtedness to the plaintiff nor of the fact that Berger had given to the plaintiff the "Contract," which had never been recorded, or that he had executed the "Certificate," or that the same was recorded. Prior to the commencement of this suit the plaintiff demanded the automobile of the defendant who refused to deliver the same. It was agreed by the parties that if the court found for the plaintiff judgment should be rendered in the sum of $2,165.

The plaintiff relied upon the "Contract" and "Certificate" and the record of the latter to make out its title and right to possession of the automobile as against the defendant.

The Justice of the Superior Court to whom the case was submitted found for the plaintiff in the sum of $2,165. The case is now before this court on exceptions to this decision by the single justice.

The exceptions in effect challenge rulings of the Justice of the Superior Court (1) that the "Contract" and "Certificate" were sufficient to convey title and a right to possession of the automobile to the plaintiff, and (2) that the recording of the "Certificate" was a sufficient record under the statutes of this State to make the plaintiff's title and right to possession valid as against the defendant, a purchaser for value and without actual notice of the plaintiff's claim.

The "Contract" whether standing alone, or taken together with the "Certificate" though in form sufficient to constitute a conditional sale from the plaintiff to Berger and to create between them the relationship of conditional vendor and conditional vendee was ineffective for that purpose.

A conditional sales agreement within the terms of our statute of frauds, R. S., Chap. 106, Sec. 8, is a transaction

whereby personal property is bargained and delivered to another with an agreement that the same shall remain the property of the seller till paid for. In other words, the property is bargained and delivered and title is to vest in the purchaser or vendee only upon the performance of a condition precedent. As said in *Morris* v. *Lynde,* 73 Me. 88, 89:

> "Except so far as some statute might require it, there was no need either of writing or of record, to enable the plaintiffs to retain the title to their own property, till the event occurred which they had made a condition precedent to their parting with title, namely, till the price was paid. The title could pass to the defendant *in presenti,* or *in futuro,* only by the consent of the plaintiffs; in accordance with their agreement. The plaintiffs agreed that the title should vest in the defendant, when he paid the price. This he has never done. The safe has always remained the plaintiffs' property, as if they had never parted with the possession, and as against Lynde and all persons claiming under him, unless some statute controls the contract, and changes the relations of the parties."

To mulitply authorities on this subject would be superfluous. This common law rule, however, has been changed by R. S., Chap. 106, Sec. 8 which requires that all agreements that personal property bargained and delivered to another shall remain the property of the seller till paid for be in writing and signed by the person to be bound thereby. The statute further provides that *such agreement* "shall not be valid except as between the original parties thereto, unless it is recorded in the office of the clerk of the city, town or plantation organized for any purpose in which the purchaser resides at the time of the purchase."

In the transaction here under consideration title was not in the plaintiff, nor was the automobile in question bargained and delivered by the plaintiff to Berger. The transaction was not a conditional sale.

Nor was the transaction a legal mortgage. A chattel mortgage, in this State, is a transfer of title by the mortgagor, the then owner, to the mortgagee to secure the performance of an obligation, the title so transferred to be extinguished by the performance of a condition subsequent. By statute, redemption of the chattel mortgaged after breach of the condition is now allowed. As said by this court in *Drake & Sons* v. *Nickerson*, 123 Me. 11, 13:

> "compliance with the condition subsequent of a chattel mortgage, by one entitled to make a redemption, though after breach of the condition of the expressly stated terms of the mortgage but within the time which the statute defines, immediately terminates the vital existence of the mortgage and takes the title to the property from the mortgagee instanter. The mortgagor, or he who stands in his stead, is thereupon invested with a right of property as complete and absolute as though the mortgage never had been given."

As we said in *Motor Car Company* v. *Hamilton,* 113 Me. 63, 65:

> "At common law there was no right of redemption by a conditional vendee. The vendee, like a mortgagor of chattels, was remediless at law, unless he performed the condition of his contract. Such a mortgagor could not redeem after breach. *Flanders* v. *Barstow,* 18 Maine, 357; 2 Hilliard on Mortgages, 4th Ed. 559. It is the statute only which gives a mortgagor the right of redemption. So it is the statute only which gives a conditional vendee the right to redeem. The situations are entirely analogous."

The cases from other jurisdictions as to the nature of an instrument in the form of a conditional sales agreement which is executed by the owner of personalty for the purpose of securing the payment of a loan of money are not

particularly helpful. This is due not only to the fact that such instruments are often declared to be chattel mortgages by statute, but also to the fact that in many jurisdictions a chattel mortgage creates only a lien on the property mortgaged as distinguished from conveying legal title thereto as in this jurisdiction. See extensive notes in 17 A. L. R. 1421, 43 A. L. R. 1247, 92 A. L. R. 304, also 138 A. L. R. 664 and 175 A. L. R. 1366. Also see *Peoples Bank of Southampton* v. *Merchants' and Farmers' Bank*, 147 S. E. (Va.) 220; *Automotive Collateral Co.* v. *Beckman*, 278 Pac. (Wash.) 417, 152 Wash. 534.

It is, however, immaterial for the purposes of this case whether the "Contract" be held to constitute a conditional sale, a chattel mortgage, an equitable mortgage, or to be wholly void as not satisfying the requirements of any of them. A conditional sale to be valid between other than the original parties thereto must be recorded in accordance with the provisions of R. S., Chap. 106, Sec. 8. No mortgage of personal property is valid except between the parties thereto unless recorded in accordance with the provisions of R. S., Chap. 164, Sec. 1. This is true even if the mortgage of personal property be an equitable as distinguished from a legal mortgage. *Shaw* v. *Wilshire*, 65 Me. 485; *Putnam* v. *White*, 76 Me. 551. The case to the *contra*, *Knight* v. *Nichols*, 34 Me. 208 was expressly overruled by *Shaw* v. *Wilshire, supra*.

When a borrower seeks to secure his loan by executing a contract in the form of a conditional sale from the lender to himself of property which he, the borrower, already owns, the contract constitutes an *equitable* mortgage. The same, although in form a conditional sale, partakes more of the nature of a mortgage, and must be recorded in the manner prescribed by statute for recording mortgages of personal property. As we said in *Shaw* v. *Wilshire*, 65 Me.

485, 491, concerning the transaction there under consideration:

> "Unless the conveyance to the plaintiff can take effect as a mortgage in accordance with the design of the parties to it, it cannot be held operative to pass the title at all.
>
> It is only by recognizing its true character as a mortgage or as evidence of a pledge that one of these anomalous instruments can be regarded as valid when it comes in conflict with the rights of those who have paid their money for the property to the general owner in possession."

We stated heretofore herein that it is immaterial for the purposes of this case whether the transaction in question be determined to be a conditional sale, a mortgage of personal property or an equitable mortgage of personal property. Our reason for so stating is as follows: If recording the so-called "Certificate" constituted a record of the mortgage or conditional sales agreement, it was made within the time and in the proper clerk's office to satisfy the requirements of either recording statute.

The real question is, does the record of the "Certificate" constitute a record of *the mortgage* or *the agreement* between the parties? We recently declared in *Tardiff* v. *M-A-C Plan of NE,* 144 Me. 208, 211:

> "It has been declared also in decided cases that the burden of establishing that a personal property mortgage, or a conditional sale agreement, encumbers, or controls, the title of the property involved rests upon the party relying on it. *Horton* v. *Wright,* 113 Me. 439; 94 A. 883, and that nothing less than full compliance with all statutory requirements will satisfy that burden. *Gould* v. *Huff,* 130 Me. 226; 154 A. 574."

Be the document in question a mortgage (legal or equitable) or a conditional sale, it is *the mortgage itself* or *the conditional sales agreement itself* which the statute requires to be recorded. There is no provision in either statute for recording anything else. There is no provision in our statute, as there is in the statutes of some states, see *Wittler-Corbin Machinery Co.* v. *Martin et al.,* 91 Pac. (Wash.) 629, 631, for the recording of a memorandum or certificate of either a mortgage or conditional sales agreement. *One* or the *other* of the two documents executed by the parties in this case constituted *the* mortgage or *the* conditional sales agreement. The mere fact that the certificate for record was signed by the borrower is not conclusive upon this question. Neither is the fact that it is entitled "Certificate to be Recorded" decisive, although this circumstance is not without marked significance. As between the parties themselves, it is perfectly clear that *the agreement, the equitable mortgage,* is contained in, and *is* the instrument entitled "Conditional Sales Contract." The "Contract" contains the full and complete terms of their agreement and expresses their respective rights with respect to the property purported to be sold, many of which are omitted from the "Certificate." This being true, the "Contract" is the document which is required to be recorded under either statute. A record of the "Certificate" did not satisfy the requirements of the statute. Record thereof was not a record of *the* equitable mortgage, and the equitable mortgage was not valid as against the defendant in this case, who was a purchaser. We are not unmindful that a contrary result was reached by the United States Circuit Court of Appeals for the Fifth Circuit in interpreting an Alabama statute in the case of *Cable Company of Alabama* v. *Stewart,* 191 Fed. 699, reversing the decision in the same case in the District Court where it was entitled *In Re Bazemore,* 189 Fed. 236, and that the same has been followed in another district in the case of *In Re Farmers' Supply Company,* 196 Fed. 990.

However, *Hoffman* v. *Cream-O Products*, 180 Fed. (2nd) 649 (U. S. C. A. 2nd Cir.), is *contra* to the *Cable* case.

As once said by the Circuit Court of Appeals for the First Circuit concerning a decision by this court, in *Traveler's Ins. Co.* v. *Thorne*, 180 Fed. 82, we now say of the Cable Company decision, "With the most unfeigned respect to the learned (Federal) court, we are unable to follow its reasoning or to reach its conclusion."

We are here concerned with the construction of a statute of our own State, and the construction of a somewhat similar statute of another State by a Federal Court, although entitled to great respect, is not a binding precedent upon this court. In fact, it is not a binding precedent even upon the court of the State which enacted the statute.

The federal cases seem to proceed on the theory that if enough of the contract is placed on record to give notice of the contract that is sufficient. They recognize the further principle, however, which is well stated in *In Re Ford-Rennie Leather Company*, 2 Fed. (2nd) 750, 756:

> "Failure to record a material part of a conditional sales contract prevented the record of the part from operating as a constructive notice to creditors."

To our mind this is not the real question *here involved* under our statute. The question is not whether enough of the contract has been placed on record to give notice of the equitable mortgage but whether *the* equitable mortgage has been recorded. As heretofore stated in this opinion, we hold that the record of the "Certificate" was not a record of the "Contract" and therefore that it does not afford constructive notice thereof, and is not valid against the defendant who was not one of the "original" parties thereto.

Nor is this decision in conflict with our opinion in the case of *Gould* v. *Huff*, 130 Me. 226. That case did not involve the sufficiency of the record, but whether the *Holmes Note itself* contained a sufficient description of the property sold, so that its record was constructive notice to third parties.

Neither is this decision in conflict with *Tardiff* v. *M-A-C Plan of NE, supra.* In that case the "sole issue" as expressly stated in the bill of exceptions and in the opinion was the correctness of the ruling below "that the recording of an unsigned copy of a conditional sale agreement is not a recording of the agreement." This ruling was sustained. True it is that what was there recorded was an unsigned copy of a short or condensed form of the agreement intended by the parties for record. It is urged by the plaintiff that because we did not specifically hold in the *M-A-C Plan* case that the recording of the short form was unauthorized, we by implication held that its record would satisfy the requirements of the statute. That case was before us on a bill of exceptions, and the question of whether the record of the short form was a compliance with the requirements of the statute was not only not decided by us, it was not even open to us for decision under the bill of exceptions which set forth the *"sole issue"* as aforesaid. The court in considering the exceptions cannot travel outside of the bill itself. *Jones* v. *Jones*, 101 Me. 447. "The purpose of a bill of exceptions is to present in clear and specific phrasing the issues of law to be considered by this court. Each ruling objected to should be clearly and separately set forth. The very purpose of the bill is to withdraw from the mass of rulings those which it is claimed are erroneous." *Dodge* v. *Bardsley et al.*, 132 Me. 230, 231. See also *Bradford* v. *Davis et al.*, 143 Me. 124.

The erroneous ruling that the record of the "Certificate to be Recorded" was sufficient under the statutes of this

State is determinative of the questions presented to us and the exceptions must be sustained.

*Exceptions sustained.*

MURCHIE, C. J.   Judge Thaxter and I realize fully that when the majority of a court construes a statute the construction declared is final and binding until and unless the legislature acts.

We deem it proper, however, to say that we would not construe R. S., 1944, Chap. 106, Sec. 8, as it is construed in this case.   It stands now, in its essentials exactly as enacted by P. L., 1895, Chap. 32.   At all earlier times it was applicable to notes, and nothing more, and it carried express provision that any agreement (or stipulation) relative to a retention of title, to be effective, must be "made and signed as a part of the note."   In 1895 its coverage was extended to include leases, conditional sales and purchases on instalments, and to any other agreement which was, or was called by, "any other name and in whatever form it may be."   The requirement that it be "made and signed as a part of" the instrument to be recorded was deleted.

It was decided long since in this court, *Chapin* v. *Cram,* 40 Me. 561, that chattel property might be described in general terms in a mortgage and identified specifically in a schedule which was not recorded.   The opinion in that case was written by Judge Tenney, who had earlier declared, in

*Sawyer* v. *Pennell,* 19 Me. 167, that the holder of a chattel mortgage, to secure the benefit of the recording statute must record everything which was made a part of the mortgage. Intention was the governing factor.

It seems to us that every essential part of an "agreement, that personal property bargained and delivered to another shall remain the property of the seller till paid for" can be expressed in a short and condensed form for purposes of record within the intention of the statute as originally enacted and that nothing which has transpired since shows a legislative intention to the contrary. The majority opinion gives effect to form rather than to substance and ignores, as we see it, the words "in whatever form it may be."

We concur in the result.