[No. 5851.   Decided December 22, 1905.]

ANGIE B. COLLINS et al., as Executors of the Last Will of John Collins, Deceased, Respondents, v. DENNY CLAY COMPANY et al., Appellants.[1]

APPEAL—REVIEW—COMPLAINT—AMENDMENTS. Where proofs were received without objection, the complaint will on appeal be considered amended to conform thereto.

EVIDENCE—CORPORATE STOCK—VALUE. Upon an issue as to the value of the stock of a corporation whose sole object was to hold lands, the value of the lands is competent to show the value of the stock.

EVIDENCE—COMPROMISE—SIMILAR TRANSACTIONS. Upon an issue as to the settlement of accounts, evidence of the settlement of another controversy is inadmissible where the parties were not the same and one settlement did not influence the other.

1Reported in 82 Pac. 1012.

CHATTEL MORTGAGES—ACCOUNTING—EVIDENCE—BURDEN OF PROOF. Upon an accounting in an action to redeem a mortgage of stock held as security, the burden of proof is upon the mortgagee to show the amount of dividends received by it on the stock to be credited on the debt.

SAME—ABSOLUTE SALE A MORTGAGE—EVIDENCE—RELEASE OF EQUITY OF REDEMPTION. The evidence is sufficient to establish that an absolute sale of corporate stock in consideration of the discharge of a settled account, accompanied by an option to repurchase the stock within a specified time, was intended as a mortgage to secure the debt, where it appears that the relation of debtor and creditor had existed for some years, that the debtor was insolvent, that the total indebtedness was less than $8,000 and the value of the stock conveyed exceeded $27,000, and the short period of four months was allowed to the debtor in which to pay the indebtedness and reclaim the stock; since, where the consideration is grossly inadequate, the courts will look with disfavor upon any relinquishment of the right of redemption, and hold that the original relation continues.

JUDGMENT—PARTIES BOUND—SURPLUSAGE. Parties cannot object that a judgment regular as to them is void because also against their assigns, who are not bound thereby, since that may be treated as surplusage.

EXECUTORS AND ADMINISTRATORS — ASSETS — TITLE — TRUST PROPERTY—EVIDENCE—PRESUMPTIONS. Where it was conceded that stock belonging to the plaintiff was held by a decedent in trust, and came into the hands of the defendants as executors of such decedent's estate, it will be presumed that the ownership continued the same, in the absence of evidence to the contrary.

EXECUTORS AND ADMINISTRATORS—LIABILITY TO THIRD PERSON— ELECTION—JUDGMENT—FORM—ENFORCEMENT. Where executors apply to the use of the estate money or proceeds belonging to a third person, they are liable both in their individual and representative capacity, and the owner having elected to hold them in their representative capacity, the judgment must be in accordance with Bal. Code, §§ 5697, 6239, providing for payment in due course of administration, and not by execution.

ACCOUNTING—STOCK HELD AS SECURITY—VALUE AT DATE OF TRIAL. In an action to secure a return of corporate stock or its value, which had been pledged to secure a debt, and had passed into the hands of executors of the pledgee charged with the trust, the plaintiff is entitled to the value at the date of the trial.

Appeal from a judgment of the superior court for King county, Frater, J., entered June 6, 1905, upon findings in

favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action to reform an agreement as a mortgage and for an accounting. Modified.

*Blaine, Tucker & Hyland,* for appellants.

*James F. McElroy* and *William Martin,* for respondents.

Rudkin, J.—On and prior to the 11th day of November, 1897, John Collins, now deceased, was indebted to the defendant Denny Clay Company in the sum of $2,517.19, with interest thereon at the rate of ten per cent per annum from February 5, 1894. This indebtedness was secured by a pledge of three hundred and forty shares of the capital stock of the defendant McNaught-Collins Improvement Company, of the face or par value of $34,000. At the same time Collins was also indebted to A. A. Denny, now deceased, in the sum of $4,325. On said 11th day of November, 1897, Collins and the Denny Clay Company, through A. A. Denny, its president, entered into the following agreement:

"This agreement, made and entered into this eleventh day of November, 1897, by and between the Denny Clay Company, the party of the first part, and John Collins, the party of the second part: Witnesseth, that, whereas, the party of the first part has commenced an action against the party of the second part in the superior court of the state of Washington, in and for the county of King, said cause being numbered 24133, for the purpose of recovering judgment against the party of the second part, in the sum of two thousand five hundred seventeen and 19-100 dollars, with interest thereon from the 5th day of February, 1894, at the rate of ten per cent per annum, upon a settled account, and for the purpose of foreclosing a pledge of three hundred and forty shares of the stock of the McNaught-Collins Improvement Company, of the nominal value of $34,000. And, whereas, said party of the first part is about to take judgment in said suit;

"Now, therefore, in consideration of the dismissal of said action and in satisfaction of the claim sued upon in said action, the party of the second part does hereby sell, assign and set over unto the party of the first part said stock as

the absolute property of the party of the first part, and as a complete settlement of the indebtedness due by the party of the second part to the party of the first part upon said settled account sued upon in said action No. 24133. The party of the first part is to dismiss said action at its own proper costs, and the party of the second part is to assign said stock to the party of the first part in the form prescribed by the by-laws of the McNaught-Collins Improvement Company.

"It is further agreed that the party of the second part shall have the privilege of purchasing said stock from the party of the first part, provided the party of the second part shall pay to the party of the first part, on or before the 15th day of March next, the sum of three thousand five hundred fifty-seven and 54-100 dollars, and any and all assessments which in the meantime may be levied upon said stock, or which the party of the first part may advance for the protection of said stock, or the property of the McNaught-Collins Improvement Company. And provided further, that the party of the second part shall pay to one A. A. Denny the sum of four thousand three hundred twenty-five dollars, and interest thereon from this date, as evidenced by a promissory note of this date, made, executed, and delivered by the party of the second part to A. A. Denny.

"In case the party of the second part shall fail to make either of said payments, to wit, the payment of said three thousand five hundred fifty-seven and 54-100 dollars by the 15th day of March next, and any and all assessments or advancements made by the party of the first part for the protection of the stock or property of the McNaught-Collins Improvement Company; or said note, in the sum of four thousand three hundred and twenty-five dollars, that this right to purchase on the part of the party of the second part shall be at an end. It is further agreed that in case any dividend shall be declared and paid upon said stock that the same shall be deducted from the purchase price thereof under this agreement. It is further agreed, that in case the party of the second part shall fail to purchase said stock, that he shall be liable on said note, according to its terms and conditions."

On the day following the execution of this agreement, the three hundred and forty shares of stock were surrendered to the McNaught-Collins Improvement Company, and reissued

to A. A. Denny, and have at all times since been held by the said Denny or the executor of his estate. This action was brought by the executors of the Collins estate against the executor of the Denny estate, and others, to declare the above agreement a mortgage or pledge, to enforce the right of redemption, and for an accounting. The court found, among other things, that the stock in controversy was of the value of $27,880, at the date of the execution of the above agreement, and of the value of $102,000, at the date of trial; that, at the time of the commencement of this action, the principal and interest due on the A. A. Denny note and the Denny Clay Company note, aggregated $12,511.80; that dividends were paid on said stock to the executors and assigns of the Denny estate, aggregating $21,960.83, or $9,-499.03 in excess of the amounts due on the two notes. The court further found that the stock was transferred as security only, and was to be returned to Collins on the payment of the indebtedness secured thereby.

On these findings the court entered its decree directing the executor of the Denny estate and his assigns to assign and surrender the stock in controversy to the plaintiffs, enjoining the defendants from incumbering or disposing of the same, and directing the defendant McNaught-Collins Improvement Company to cancel said certificate of stock, and reissue the same to the plaintiffs. It was further decreed that, in case it should thereafter be made to appear that the defendant executor, or the defendants Denny Clay Company or Denny Estate, Inc., had sold, disposed of, or incumbered said stock, or placed it beyond their power or control to surrender the same since the commencement of this action, the plaintiffs, upon such showing, should have personal judgment against the executor and assigns for the sum of $102,000, the value thereof, and jurisdiction was reserved for the purpose of rendering such judgment. It was further decreed that the A. A. Denny note and the Denny Clay Company note be canceled; that the defendant executor and the defendant

Denny Estate, Inc., be required to account to the plaintiffs for the sum of $9,449.03, and that the plaintiffs recover judgment against the executor for said sum. From this judgment the defendants appeal.

Objection is made to the sufficiency of the complaint to sustain the judgment, as rendered against some of the appellants, but the proofs were received without objection, and this court will consider the complaint amended, if need be, to conform to the facts proved. Objection is also made to the sufficiency of the testimony to sustain the findings of the court as to the value of the stock of the McNaught-Collins Improvement Company, at the time of the execution of the agreement in controversy, and also as to the amount of dividends paid thereon. Objection is also made to the competency of certain evidence received for the purpose of showing the value of the stock, and the competency and materiality of certain evidence excluded. In view of the fact that the sole object of the McNaught-Collins Improvement Company was to hold certain tide lands, evidence as to the value of its holdings would seem competent for the purpose of fixing the value of its stock. The corporation was not engaged in business of any kind, and the aggregate value of all its stock would be approximately the value of its property, less the amount of its indebtedness. Evidence as to the settlement of another controversy between Collins and other parties, on the one part, and Denny on the other part, at or about the same time, was properly excluded. The parties were not the same, and it was not shown that one settlement entered into or influenced the other. We fully recognize the difficulty of fixing the market value of such property at the time the agreement in question was entered into; but the finding of the court as to such value seems to be well within the testimony; and inasmuch as the stock was turned over in satisfaction of a debt that slightly exceeded $3,000, the result of this action would be the same had the court found the value to be much less than it did. The finding as to the amount of dividends

paid is fully sustained by the testimony. The burden was on the appellants to account for such dividends, and to establish any proper disbursements made on account of the stock. This they wholly failed to do. The finding as made, if objectionable at all, is too favorable to appellants. The court allowed interest on the notes up to the commencement of the action, but no interest on the dividends received.

The only remaining question is the correctness of the finding or conclusion that the transaction in question was a mortgage or pledge. This is a mixed question of law and fact, and both parties agree that whether a conveyance be a mortgage or a conditional sale must be determined by a consideration of the peculiar circumstances of each case. All the authorities agree that a mortgagor cannot, through any device, bargain away his right of redemption at the time of giving the mortgage. *Bradbury v. Davenport,* 114 Cal. 593, 46 Pac. 1062, 55 Am. St. 92; *Plummer v. Ilse, ante* p. 5, 82 Pac. 1009. While a mortgagor may release his equity of redemption to the mortgagee by a subsequent agreement, yet the courts view such agreements with distrust and disfavor, and if it appears that the mortgagee has taken advantage of the necessities of the mortgagor, or that the consideration is grossly inadequate, the release will be disregarded and the original relation held to continue. Applying these rules in the case at bar, it appears that the relation of debtor and creditor existed between Collins and Denny and the Denny Clay Company, at the time the agreement in question was entered into, and had so existed for some years before. Collins was insolvent, owing in all about $200,000. The total indebtedness included in the two notes was less than $8,000, and the total indebtedness actually released less than $3,500. The value of the property surrendered, as found by the court, exceeded $27,000, and the short period of four months was allowed an insolvent debtor to pay the indebtedness and reclaim the stock. We doubt if any authority can be found to sustain such a transaction.

In *Russell v. Southard,* 12 How. 139, 13 L. Ed. 927, the disparity between the value of the property and the amount of the mortgage debt was not so great as in this case; the agreement relied on was just as binding and just as explicit as in the case at bar, and in other respects the equities in favor of the mortgagor were not as strong as those found here. In respect to the adequacy of the consideration, the court in that case, speaking through Mr. Justice Curtis, said:

"In examining this question it is of great importance to inquire whether the consideration was adequate to induce a sale. When no fraud is practiced, and no inequitable advantages taken of pressing wants, owners of property do not sell it for a consideration manifestly inadequate, and, therefore, in the cases on this subject great stress is justly laid upon the fact that what is alleged to have been the price bore no proportion to the value of the thing said to have been sold."

Again, speaking of the written memorandum, the court said:

"In respect to the written memoradum, it was clearly intended to manifest a conditional sale. Very uncommon pains are taken to do this. Indeed, so much anxiety is manifested on this point, as to make it apparent that the draftsman considered he had a somewhat difficult task to perform. But it is not to be forgotten that the same language which truly describes a real sale, may also be employed to cut off the right of redemption, in case of a loan on security; that it is the duty of the court to watch vigilantly these exercises of skill, lest they should be effectual to accomplish what equity forbids; and that, in doubtful cases, the court leans to the conclusion that the reality was a mortgage and not a sale;"

citing a number of cases. Again:

"It is true, Russell must have given his assent to this form of the memorandum; but the distress for money under which he then was, places him in the same condition as other borrowers, in numerous cases reported in the books, who have submitted to the dictation of the lender under the pressure of their wants; and a court of equity does not consider a consent, thus obtained, to be sufficient to fix the rights of parties. 'Necessitous men,' says the Lord Chancellor in *Vernon v. Bethell,* 2 Eden 113, 'are not, truly speaking, free

men; but, to answer a present emergency, will submit to any terms that the crafty may impose upon them.' The memorandum does not contain any promise by Russell to repay the money, and no personal security was taken; but it is settled that this circumstance does not make the conveyance less effectual as a mortgage;" citing cases. "And consequently it is not only entirely consistent with the conclusion that a mortgage was intended, but in a case where it was the design of one of the parties to clothe the transaction with the form of a sale, in order to cut off the right of redemption, it is not to be expected that the party would, by taking personal security, effectually defeat his own attempt to avoid the appearance of a loan."

The above is a leading case on the question under consideration, and has been followed and approved in a multitude of cases in both the state and federal courts. See, 5 Rose's Notes, U. S. Reports, p. 77, and cases cited. The conclusion of the trial court that the stock stood as security only is amply sustained by the authorities.

Numerous objections are urged against the form and substance of the decree. It is certainly open to criticism, but this does not necessitate a reversal unless it injuriously affects some substantial rights of the appellants. That portion of the decree which runs against the *assigns* is probably void for uncertainty. It is at least void as to assigns not before the court, as they would be entitled to be heard, before judgment could be taken against them. But this part of the decree may be rejected as surplusage without affecting the rights of parties properly described therein.

It appears from the testimony of appellants themselves that this stock stood in the name of A. A. Denny from November 12, 1897, until the time of his death, and in the name of A. A. Denny Estate from thence until July 2, 1904, and no change appears after that date. In the absence of proof, we will presume that the ownership continued the same. It further appears that all dividends paid on the stock were received by A. A. Denny or by the Denny Estate. It is con-

tended that, if the executor converted this stock, or wrongfully received dividends thereon which belonged to others he is liable in his individual and not in his representative capacity. This stock stood in the name of the decedent at the time of his death, and came into the hands of his executor as a part of his estate. Under such circumstances the more equitable rule is that if the executor or administrator applies to the use of the estate money or the proceeds of property belonging to a third person, he is liable in both his individual and representative capacity, and the injured party may elect whether he will hold him in the one capacity or the other. Respondents elected to pursue the executor in his representative capacity, as they had a right to do; but having followed that course, they can only take such judgment as the law authorizes in such cases. By Bal. Code, § 6239,

"The effect of any judgment rendered against any executor or administrator shall be only to establish the claim in the same manner as if it had been allowed by the executor or administrator, and the court; and the judgment shall be, that the executor or administrator pay, in due course of administration, the amount ascertained to be due, but no execution shall issue upon such judgment, nor shall it create a lien upon the property of the estate, or give the judgment creditor any priority of payment."

By Bal. Code, § 5697, the judgment is not deemed to be evidence of assets in the hands of the personal representative, unless assets are alleged. The judgment against the executor will be modified to conform to the above provision.

It is further objected that the value of the stock should have been fixed as of the date of conversion, and not as of the date of trial. This is not an action to recover damages for the conversion of property, nor is any conversion shown. If the stock stood in the name of the decedent as security, it came into the hands of his personal representative charged

10—41 WASH.

with the same trust, and still stands as security. The court properly fixed the value as of the date of trial.

The remaining objections to the decree arise from the erroneous assumption that the burden of proof to establish certain facts rested upon the respondents. We find no error in the record, except as to the form of the judgment against the executor. The judgment against him will be so modified as to be made payable in due course of administration, as prescribed by Bal. Code, § 6239, *supra,* and any judgment hereafter rendered against the executor in the court below will conform to the same statute. As thus modified, the judgment is affirmed. The respondents will recover their costs here.

MOUNT, C. J., FULLERTON, HADLEY, CROW, ROOT, and DUNBAR, JJ., concur.