[No. 21146. *En Banc.* June 13, 1929.]

AUTOMOTIVE COLLATERAL COMPANY, *Respondent,* v.
LEONA BECKMAN, *Appellant.*[1]

*Clyde H. Belknap* and *G. W. Stocker,* for appellant.
*White & Cunningham,* for respondent.

FRENCH, J.—The respondent, by bringing a claim
and delivery action, sought to establish title and re-
cover possession of a certain Buick sedan. Judgment
was rendered in its favor, and this appeal follows.

The facts are not seriously in dispute. It appears
from the record that one Greear originally purchased
the automobile in question from the Eldridge Buick
Company, ultimately giving to that company a chat-
tel mortgage for the balance of the purchase price.
Thereafter Greear was in possession of the car at all
times, driving the same under a private license issued

[1]Reported in 278 Pac. 417.

in his name. Greear entered into the employ of one Roy Finch, doing business as the Finch Motor Company. Appellant bought the car in question from Greear. Appellant had learned that Greear had originally purchased the car from the Eldridge Buick Company, and had learned of the existence of the chattel mortgage in favor of that company, and, at the time she purchased the car and took delivery from Greear, who was then in possession, as a part of the purchase price, required the payment and satisfaction of the chattel mortgage to the Eldridge Buick Company.

About a month prior to the time appellant purchased the car, a conditional sales contract was executed by Finch and Greear, by the terms of which Finch contracted to sell to Greear the car in question. Finch has disappeared, and Greear refuses to testify, on the ground that his answers might tend to incriminate him.

There is not a scintilla of evidence in this record from which the court can say that the title to this car was ever in Finch or the Finch Motor Company. Appellant's inquiry disclosed that the car had originally been purchased from the Eldridge Buick Company by Greear; that Greear was in possession, and had been at all times; that he was driving the car under a private license taken out in his own name.

Respondent made no investigation whatsoever of the title to this car, and any examination or investigation would have disclosed the fact that Finch had no title in so far as the public records were concerned, and the law of this state does not favor undisclosed titles to personal property. *Flynn v. Garford Motor Truck Co.*, 149 Wash. 264, 270 Pac. 806. Before there could be any effect given to the conditional sales contract between Finch and Greear, Finch must have had

title to the car. The title having been shown to be in Greear, it is presumed to continue until the contrary is shown. 22 C. J., p. 87, § 29. There is no testimony of any kind indicating any transfer of title to Finch.

At the time of appellant's purchase of the car, Greear disclosed a good record title, subject to the chattel mortgage; he had possession of the car, there were no circumstances present which would tend to put appellant on inquiry, and there were no instruments of record showing that Greear had ever sold or encumbered the car in any way, except the chattel mortgage to the Eldridge Buick Company and the purported conditional sales contract. Respondent, without investigation of any sort, purchased the conditional sales contract whereby Finch, as vendor, purported to sell this automobile to Greear. There is no instrument of record conveying the title to Finch, and the evidence completely negatives the idea that Finch ever had possession of the automobile. A conditional sales contract has been defined to be, "when it is agreed that until the price is paid, the title is to remain in the vendor." *Rose v. Story*, 1 Pa. St. 190; 44 Am. Dec. 121. The title could not remain in Finch; it was never there. Conditional sales contracts are not negotiable, only assignable, and under numerous decisions of this court, respondent could obtain no greater title to the automobile in question than Finch had.

This purported sales contract not being based on title in Finch, conveys no rights as against an innocent purchaser from Greear, who had both actual possession and apparently a clear title.

Reversed.

MILLARD, PARKER, and MAIN, JJ., concur.

FULLERTON, J., concurs in the result.

TOLMAN and HOLCOMB, JJ., dissent.

BEALS, J. (concurring)—It does not appear from the record in this case that the purported sale of the car from Finch to Greear was based upon either an actual title, a title of record, or even possession, and in my opinion the filing of the conditional sale agreement whereby Finch purported to sell the automobile to Greear, together with the assignment of this conditional sale contract to respondent, does not give respondent a better claim to the automobile than that possessed by appellant, who in good faith, and for value, purchased the car from Greear, who had a good record title thereto, unbroken by any conveyance from himself, coupled with an undisturbed possession of the car since the delivery thereof to him by the original vendor.

If Finch ever did procure title to the car from or through Greear, he failed to file the instrument of conveyance for record and left the car in the possession of Greear, making no attempt to comply with Rem. Comp. Stat., § 5827, which provides that no transfer of personal property shall be valid as against existing creditors or innocent purchasers, where the property is left in the possession of the vendor, unless the bill of sale be recorded in the office of the auditor of the county in which the property is situated within ten days from the date of the sale. Under these circumstances, Finch's title, if any, was subject to be divested by a sale of the car by Greear, while in possession thereof, to an innocent purchaser. The making and filing of a purported conditional sale from Finch to Greear and the assignment of his interest therein by Finch to respondent can give respondent no better right to the car, as against an innocent purchaser from Greear, than Finch would have had as against such a purchaser.

538

Assuming that both parties to this action are innocent purchasers, in my opinion, the rights and equities of appellant are superior to those of respondent, and I therefore concur in the opinion of the majority reversing the judgment of the superior court.