[No. 31820. Department Two. October 2, 1952.]

*In the Matter of the Estate of* SARAH E. SHANER, *Deceased.* OLIVE M. JOHNSON, *Respondent,* v. VEIDA S. MORROW *et al., Appellants.*[1]

[1]Reported in 248 P. (2d) 560.

*Hyland, Elvidge & Watt,* for appellants.

*Clemans, Kasperson & Allison,* for respondent.

HAMLEY, J.—The question here in controversy is whether three thousand dollars in currency, found in a certain safety deposit box, belongs to the estate of Sarah E. Shaner, deceased, or is the personal property of Veida S. Morrow (Mrs. James I. Metcalf).

Safety deposit box No. C310 at National Bank of Commerce, Seattle, was rented on November 23, 1942, by Mrs. Shaner "and/or" Veida Morrow. The bank regarded this as a joint rental arrangement whereby either Mrs. Shaner or Miss Morrow had the right of access to the box without requiring the presence or consent of the other. Two keys were issued. Miss Morrow testified that she retained possession of one of these keys, but the testimony is in dispute on that point.

Miss Morrow testified that she placed some of her personal property in the box when it was first rented, and thereafter, from time to time, placed in, or took from, the box some of her personal property. During Mrs. Shaner's lifetime, Miss Morrow never went to the box without Mrs. Shaner being present, except on one occasion late in 1942 or early in 1943.

Miss Morrow was out of town when Mrs. Shaner died in a Seattle hospital on October 25, 1948. Later the same day, Mrs. Shaner's niece, Mrs. Olive M. Johnson, obtained a court order permitting Mrs. Johnson to gain access to the safety deposit box to search for a will. Mrs. Johnson lives in San Francisco, but had come to Seattle in July, 1948, when advised by Miss Morrow that Mrs. Shaner was ill and had been taken to a hospital. The box was opened on October 25, 1948, by Mrs. Wilhelmina Miller, manager of the bank's safekeeping department, in the presence of Mrs. Johnson, Mrs. Laura P. Butler, and a Mrs. Ritch. Mrs. Butler and her husband, Dr. F. M. Butler, are the owners of the apartment building where Mrs. Shaner had lived. Mrs. Ritch is a bank stenographer.

Among the items found in the box was fourteen thousand dollars in currency. All items, including the currency, but excluding miscellaneous pieces of paper thought to have no value, were then listed in an inventory. Mrs. Shaner's last will, naming Veida Morrow as executrix, was also found in the box. All items except the will were returned to the deposit box after the inventory had been completed.

Miss Morrow qualified as executrix of the estate on October 27, 1948. The estate inventory, which she filed on May 12, 1949, lists, as one item, cash in the sum of eleven thousand dollars found in the safety deposit box. This listing was adhered to throughout the administration of the estate and in the final account and petition for distribution filed on February 15, 1950.

It has been Miss Morrow's position throughout that the remaining three thousand dollars in currency found in the box was her own personal property. Contesting this claim, Mrs. Johnson, who is a principal legatee under the will, brought an action against Veida S. Morrow and her husband, personally, and against Veida S. Morrow as executrix of the estate. Mrs. Johnson raised the same question in objections which she filed against the final account and petition for distribution in the estate.

The two proceedings were consolidated for trial. A single decree was entered sustaining Mrs. Johnson's contention.

Miss Morrow, as an individual, was directed to pay to herself, as executrix of the estate, the sum of three thousand dollars. Miss Morrow appeals.

The first assignment of error involves the admission, over appellant's objection, of respondent's exhibit 2. This is a memorandum, written by Mrs. Johnson, signed by Mrs. Shaner, and witnessed by Dr. and Mrs. F. M. Butler. Respondent introduced this exhibit for the purpose of showing that Mrs. Shaner thought of the entire fourteen thousand dollars in the safety deposit box as her property, and dealt with it as though it were hers.

Appellant objected to the introduction of the exhibit on the ground that it was hearsay evidence. The objection was overruled and the exhibit was admitted. The trial court's oral opinion in favor of respondent, announced at the close of the trial, indicates that some consideration was given to this exhibit. The view was expressed, however, that this "may be a rather minor point of evidence." In thereafter ruling on appellant's motion for a new trial, the trial court reversed its previous ruling as to the admissibility of exhibit 2. The motion for a new trial was nevertheless denied on the ground that, with exhibit 2 excluded, the remaining evidence required the court to adhere to its decision in favor of respondent.

■ Exhibit 2 having been eventually excluded, its initial reception in evidence, if erroneous, was not prejudicial. Whether the evidence remaining in the record after the exclusion of exhibit 2 is sufficient to support the court's findings of fact, is a question to be dealt with in discussing other assignments of error.

Appellant's second assignment of error invokes the principle of *res judicata* or estoppel by judgment. It is contended that, in prior litigation involving respondent, appellant was held to be a joint owner of the safety deposit box in question, to have the right of access thereto, and to be the owner of certain property kept in such box. Accordingly, appellant argues, the trial court erred in failing to rule that the prior adjudication was determinative of these issues, and in receiving evidence upon such issues and determining

them anew in this proceeding. Appellant advanced this view in her pleadings and in objections to the introduction of evidence.

The prior adjudication upon which appellant relies was had in an action in the superior court for King county, entitled Veida S. Morrow v. Sylvia Hoffner and Jewel Perkins. This was an action in replevin to recover certain dining room furniture. Appellant there contended that Mrs. Shaner had given her the furniture, then in storage, by executing and delivering to appellant a bill of sale or letter of gift. Respondent, without knowledge or in disregard of this transaction, had taken possession of the furniture and sold it to Sylvia Hoffner and Jewel Perkins. The replevin action was therefore brought against the buyers of the furniture and respondent was not a named party to the action. However, respondent was a principal witness in that litigation. Appellant also asserts that respondent was personally interested in the outcome, since she would be liable to the defendants if their title to the furniture failed.

The trial court entered judgment for appellant in the Hoffner case. In support of this judgment, the court found, among other things, that on October 30, 1947, Mrs. Shaner had executed and delivered to appellant a bill of sale or memorandum of gift describing the furniture; and that appellant had received and retained "and ever since has retained full possession, ownership and control over said document."

Appellant asserts that this document was in the safety deposit box in question at and prior to the time of Mrs. Shaner's death. Predicated upon this assertion, it is appellant's contention that the quoted finding of fact entered in the Hoffner case, and the judgment entered pursuant thereto, amounted to an adjudication of appellant's joint ownership of and right of access to this safety deposit box.

Neither the pleadings nor the findings of fact, conclusions of law and judgment in the Hoffner case make reference to the safety deposit box here in question. It is only when we turn to the trial court's oral decision in that case that we find any reference by the court to the deposit box. The court

there indicated that it believed the testimony of Veida Morrow to the effect that Mrs. Shaner had delivered the bill of sale and letter of gift to Miss Morrow; that the latter had kept it in her secretary (writing desk at home) "for many months"; and that she later transferred it to the safety deposit box in question "where she and Mrs. Shaner were joint tenants, but which she [Miss Morrow] had not entered alone, at least since January 1, 1943."

■ Reading the findings of fact in the light of the oral decision, we conclude that, at most, the judgment in the Hoffner case constitutes an adjudication that Miss Morrow was a joint tenant of the box; that she had not exercised such right alone since January 1, 1943; but that her arrangement with Mrs. Shaner was such that the document was placed in the deposit box without Miss Morrow surrendering its possession, control, or custody to Mrs. Shaner.

The first two of these findings correspond to the undisputed evidence introduced in the instant case. The third finding is irrelevant to the present controversy. Hence, assuming that such determinations made in the prior case could be said to be *res judicata*, appellant was not prejudiced by the re-inquiry in this proceeding. We express no opinion as to whether, in any event, there was such identity of persons and parties as to warrant application of the principle of *res judicata*. See *Walsh v. Wolff*, 32 Wn. (2d) 285, 201 P. (2d) 215.

■ The next assignment of error questions the action of the trial court in overruling appellant's challenge to the sufficiency of the evidence and denying her motion to dismiss at the close of respondent's case. Appellant did not elect to stand on her motion, but proceeded with the trial and produced evidence in her own behalf. Having made this election, appellant may not now predicate error upon the denial of the motion to dismiss. *Brown v. Wolfe*, 185 Wash. 641, 56 P. (2d) 681; *Blair v. McKinnon*, 40 Wn. (2d) 492, 244 P. (2d) 250.

The remaining assignments of error are directed to the question of whether respondent sustained the burden of proving, by a preponderance of the evidence, that the three

thousand dollars in currency in question was the property of Mrs. Shaner at the time of her death.

▮  The burden of proof rested with respondent not only because she was the plaintiff in the separate action which was brought, but also because she challenges, in the estate proceeding, the inventory, which is presumed to be correct. See *In re Hamilton's Estate,* 182 Wash. 81, 89, 45 P. (2d) 36.

▮  Both parties, in producing evidence relative to the ownership of the three thousand dollars in currency, were handicapped because of the operation of the so-called "dead man's statute." RCW 5.60.030 (Rem. Rev. Stat., § 1211). The parties were nevertheless able to submit considerable testimony bearing upon the issue. The most significant testimony produced by respondent was appellant's testimony, as an adverse witness, that in February, 1948, when appellant first knew that the three thousand dollars in currency was in the deposit box, the money then belonged to Mrs. Shaner.

This testimony immediately created a presumption that ownership of the money continued in Mrs. Shaner. *Collins v. Denny Clay Co.,* 41 Wash. 136, 144, 82 Pac. 1012; *Automotive Collateral Co. v. Beckman,* 152 Wash. 534, 536, 278 Pac. 417; *Forsberg v. Tevis,* 191 Wash. 355, 357, 71 P. (2d) 358; *Bishop v. Lynch,* 8 Wn. (2d) 278, 289, 111 P. (2d) 996.

Shortly after giving this testimony, appellant testified, on cross-examination, that after February, 1948, the three thousand dollars belonged to her. Appellant contends that this testimony completely destroyed the previously-created presumption, and that respondent failed to sustain her burden of proof by producing further evidence.

▮  In giving this rebutting testimony, Miss Morrow was in the position of an interested witness. It is the rule in this state, however, that a presumption may be overcome by competent rebutting testimony from either interested or disinterested witnesses. *Bradley v. S. L. Savidge, Inc.,* 13 Wn. (2d) 28, 63, 123 P. (2d) 780; *Carlson v. Wolski,* 20 Wn. (2d) 323, 333, 147 P. (2d) 291; *Hanford v. Goehry,* 24 Wn. (2d) 859, 167 P. (2d) 678.

The cited cases, which dealt with the presumption of agency arising from ownership of a vehicle involved in an accident, also announce the rule that the presumption is not overcome unless the rebutting testimony is "uncontradicted, unimpeached, clear and convincing." We need not decide whether this rule also governs with respect to the particular presumption before us, since appellant does not contend for a lesser burden of rebutting proof. Appellant here argues only that the rebutting testimony *was* "uncontradicted, unimpeached, clear and convincing," and hence the trial court should have ruled that the presumption had been destroyed.

Accepting the issue as presented by appellant, should we hold that the trial court erred in finding that Miss Morrow's rebutting testimony was neither uncontradicted nor convincing? Where the trial judge was not convinced, can we say, as a matter of law, that he should have been convinced?

This very question was posed in *Hanford v. Goehry, supra.* In that case, we were, as here, asked to hold that the trial court erred in finding that the testimony of an interested witness in opposition to a presumption of fact was not convincing. In declining to do so, we pointed to the first sentence of Rem. Rev. Stat., § 1211 (now RCW 5.60.030), which provides that the interest of a party may be shown to affect his credibility. We then said:

"It is implicit in this statutory provision that the evidence of interested witnesses is subject to discount, but at what rate? This is a matter which a trial judge is much better qualified to determine than we can possibly be. A trial judge, in evaluating the testimony of a witness, observes and considers his general appearance, his behavior in the courtroom, his demeanor on the witness stand, and his manner of giving evidence, etc., and it would seem that such considerations would be especially strong factors in the evaluation of the testimony of an interested witness. The phrase 'convincing witness' is frequently encountered in the law reports. While it is reasonable to suppose that the content of the evidence given by witnesses so-called was largely the cause of their being so designated, we have no doubt but that their appearance, demeanor, manner of giving evidence,

etc., were, in most instances, the major factors involved. As to such matters, we who are asked to hold, on appeal, that the trial court should have been convinced, have no knowledge whatsoever." (p. 867.)

Likewise, in the case before us, we have no knowledge which permits us to hold that the trial judge should have been convinced by appellant's testimony in opposition to the presumption of continued ownership.

Nor are we in a much better position to say that the trial judge should have been convinced by the additional evidence of a more or less circumstantial nature which appellant produced in support of her claim. That evidence did not stand unrebutted. In addition to exhibit 2, which we disregard, respondent produced considerable circumstantial evidence tending to support the presumption of continued ownership.

The trial judge was in the best position to evaluate all of this evidence. The record indicates that he did so with care. He found that the evidence tending to overcome the presumption was unconvincing. We have examined all of the testimony and exhibits, and are satisfied that the evidence does not clearly preponderate against this finding. Hence, the trial court did not err in finding and concluding that the presumption of continued ownership in Mrs. Shaner had not been overcome.

If it be assumed, however, that the presumption, as such, was destroyed by the rebutting testimony of Miss Morrow, this would not necessarily call for reversal. The trial court found that, even without the benefit of the presumption of continued ownership, respondent had maintained her burden of proof regarding the ownership of the currency.

It is undisputed that the money was found in a safety deposit box which was used almost entirely by Mrs. Shaner; that Miss Morrow never attempted to enter the box alone after 1942 or 1943; that the three thousand dollars in question was in the safety deposit box in February, 1943, and at that time the money was owned by Mrs. Shaner; that Miss Morrow is an attorney and an experienced business woman; that she and her husband, during the period in question,

maintained a safety deposit box in another bank; that during the period appellant claimed to be the owner of this three thousand dollars, she was indebted to a bank in the sum of five thousand dollars.

As before indicated, appellant was greatly handicapped in presenting her case by reason of the operation of the "dead man" statute. However, a court may not, because of such difficulty, content itself with a lesser measure of proof than would otherwise be considered convincing.

Appellant presented considerable testimony and some exhibits tending to show that, after the three thousand dollars became appellant's property, it was segregated from the remaining eleven thousand dollars and placed in a section of the safety deposit box set apart for her use. The bank employees and other witnesses in whose presence the box was opened after Mrs. Shaner's death were unable to corroborate this testimony. The exhibits were inconclusive. Appellant offered testimony tending to explain why she retained the three thousand dollars in this deposit box while she and her husband maintained another box, and while she was indebted in the amount of five thousand dollars. The trial court apparently did not give controlling weight to this testimony.

It is our conclusion that the trial court's finding, apart from the presumption, that the three thousand dollars is the property of the estate, is not contrary to the clear preponderance of the evidence.

The judgment is affirmed.

SCHWELLENBACH, C. J., HILL, FINLEY, and OLSON, JJ., concur.