FILED
COURT OF APPEALS
DIVISION II

2014 NOV 13 AM 9: 00

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Estate of<br>MARIE J. REESE,<br><br>          Deceased.<br><br>BEVERLY JO GESSEL,<br><br>          Appellant,<br><br>   v.<br><br>MARILYN SANGER, as Personal<br>Representative of the estate of MARIE J.<br>REESE, deceased,<br><br>          Respondent. | No. 45405-0-II<br><br><br><br><br><br>UNPUBLISHED OPINION |

MAXA, J. — Beverly Gessel, a beneficiary of her mother's will, appeals the probate court's order approving the final accounting of the estate following a hearing on the personal representative's final report and petition for decree of distribution. Gessel argues that the trial court erred in (1) proceeding with the hearing when she did not receive proper special notice as required in RCW 11.28.240(1); (2) closing the estate without continuing the hearing to allow her to obtain evidence regarding estate property valuation and hearing additional valuation testimony from both parties; (3) interpreting the will as including the value of all her testamentary gifts in an equalization provision, rather than excluding from the equalization calculation her gift of liquid assets; and (4) approving (and not disgorging) the attorney fees paid to the personal

representative's attorney because the personal representative failed to give advance notice of intent to pay the attorney fees.

We reject Gessel's arguments and affirm. But we deny the personal representative's request for an award of reasonable attorney fees on appeal.

FACTS

Marie Reese died on June 23, 2012. Reese's last will and testament was admitted to probate. The will named Reese's three daughters, Gessel, Marilyn Franz, and Janice Sanger, as beneficiaries of her estate. Consistent with the will, Franz was appointed personal representative with non-intervention powers.

On July 27, 2012, Franz mailed notice of her appointment as personal representative and pendency of probate proceedings to the other two beneficiaries, Gessel, and Sanger. On August 2, Gessel requested special notice of all matters in the administration of the estate, including the filing of the inventory and intent to pay attorney fees, to be served on her attorney at 1048 West James Street, Suite 102 in Kent.

On December 26, 2012, Franz filed an inventory of the estate, which included the appraised values of the estate's real property. Franz served a copy of the inventory on Gessel's attorney consistent with the request for special notice. Franz incurred attorney fees in her capacity as personal representative, and she paid the majority of those fees as they came due monthly without giving advance notice to Gessel.

Over seven months later, Franz sought to close the estate under RCW 11.76.050, which authorizes the court to consider objections to the final report and petition for distribution. On July 30, 2013, Franz filed the final report and petition for decree of distribution with the probate

2

court. She sought an order approving the final report (including fees and expenses incurred), distributing all property, discharging the personal representative, and closing the estate. Franz noted the hearing on the petition for August 30, 2013.

On August 1, Franz mailed Gessel's attorney notice of the hearing, final report and petition for decree of distribution, affidavit of attorney fees, and proposed order approving the final report. However, Franz used the address on Gessel's attorney's letterhead – 1122 West James Street, Suite 102 in Kent – rather than the address provided in the request for special notice, which was 1048 West James Street, Suite 102.[1] Franz also mailed notice of the hearing and a copy of the final report to each of the will beneficiaries, including Gessel.

The day before the hearing, Gessel filed an objection to the final accounting, alleging that (1) she did not receive proper notice of the proceeding; (2) Franz failed to maintain the estate property, causing a decrease in value of the estate; (3) an improper method was used to value certain estate property; (4) the amount of Gessel's equalizing lien was improperly calculated and not timely paid; and (5) Franz failed to provide advance notice of compensation paid to the attorney representing her in her capacity as personal representative. Gessel requested that the probate court deny the petition for decree of distribution, continue the hearing and set the matter for an evidentiary hearing on the value of the estate property, and disgorge all fees received by the attorney.

---

[1] The incorrect address was apparently on the letterhead of Gessel's most recent correspondence to Franz. In addition, one of Gessel's letters to this court includes the incorrect address.

3

The probate court denied Gessel's request to continue the hearing and to consider testimony on the valuation issue. Instead, the trial court approved the final report, authorized the attorney fees, and ordered the distribution of the estate despite Gessel's objections. Gessel appeals.

## ANALYSIS

### A.    FAILURE TO COMPLY WITH REQUEST FOR SPECIAL NOTICE

Gessel requested special notice under RCW 11.28.240(1) early in the probate action. Franz technically violated RCW 11.28.240(1) when she mailed the notice of her petition for decree of distribution to the wrong address. Gessel argues that because this notice was defective, the probate court erred in holding the hearing on the final report and petition for distribution. We hold that the probate court did not err in proceeding with the hearing because (1) Franz mailed notice to Gessel at her personal address as required in RCW 11.76.040, (2) there is no evidence that Gessel and her attorney did not receive actual statutory notice, (3) Gessel and her attorney did receive actual notice of the hearing, and (4) Gessel filed objections on the merits and participated in the hearing.

1.    Effect of Defective Notice

RCW 11.28.240(1) allows any person interested in the estate as an heir, devisee, distributee, legatee, or creditor to serve on the personal representative (or his/her attorney) a written request for special notice of various actions in the administration of the estate. The request for special notice must designate the address where notice must be sent. RCW 11.28.240(1). Once a request for special notice is served, the personal representative must mail notice to the designated address at least 10 days before a hearing on one of the listed actions or

4

provide personal service. RCW 11.28.240(1). One of the actions listed in RCW 11.28.240(1) for which special notice is required is the filing of a request for distribution.

Here Franz did file proof of mailing of notice to Gessel. The problem was that the mailing was "defective" – notice was sent to an address other than the one listed in the request for special notice. RCW 11.28.240(1) does not address the effect of *defective* notice. However, the purpose of notice statutes is to ensure due process for a nonmoving party and to allow that party to respond intelligently. *See Nisqually Delta Ass'n v. City of DuPont*, 103 Wn.2d 720, 727, 696 P.2d 1222 (1985). Under the facts of this case, Gessel received due process and was not prejudiced by the defective notice for a number of reasons. [2]

First, Franz did mail notice to Gessel at her personal address, as required in RCW 11.76.040. There is nothing in the factual record indicating that Gessel did not receive this notice.[3] If Gessel received actual notice more than 10 days before the hearing, the violation of RCW 11.28.240(1) would not have prejudiced her.[4]

---

[2] Franz argues that the probate court could proceed with the hearing because she complied with the service requirements of CR 5(b)(1). However, she provides no argument or authority why this court rule trumps the requirements of RCW 11.28.240(1). Therefore, we do not consider this argument.

[3] At oral argument in the probate court, Gessel's counsel represented that the notice sent to his client went to her neighbor's address, so she did not receive it either. Gessel makes the same argument on appeal. However, neither Gessel nor her counsel's declarations (filed with Gessel's objections) state that the notice sent to Gessel's personal address was incorrectly addressed.

[4] In addition, RCW 11.76.050 provides that the probate court may proceed with a hearing on a petition for distribution if the court is satisfied that notice of the hearing "has been given as provided herein," i.e., under RCW 11.76.040.

Second, Franz's attorney represented that notice was sent to the address that was on Gessel's attorney's letterhead just seven months earlier, which happened to be different than the address identified in the request for special notice. The probate court found that mailing notice to this address was reasonable.

Third, neither Gessel nor her attorney submitted sworn statements that they did *not* receive actual notice at least 10 days before the hearing. Because Gessel obviously received notice and filed objections, the probate court did not have to assume that she did not receive actual notice consistent with the special notice requirement.

Fourth, even if Gessel did not receive actual notice more than 10 days before the hearing, she did receive notice in time to submit objections and she was able to appear and present her arguments at the hearing. Gessel did not argue that the defective notice prevented her from fully and fairly asserting her objections to Franz's proposed distribution.

Gessel argues that the improper notice damaged her because the court penalized her for being unable to present valuation evidence on short notice. But the probate court's refusal to grant a continuance to allow Gessel to collect additional valuation information or to hold an evidentiary hearing is a separate issue (discussed below) from whether Gessel received adequate notice of the hearing in order for the court to proceed to the merits of the petition.

We hold that even though Franz technically violated RCW 11.28.240(1) in mailing notice of the hearing, under the circumstances Gessel received due process and the probate court did not err in proceeding with the hearing.

B.   CHALLENGE TO VALUATION OF ESTATE PROPERTY

Gessel argues that the trial court erred in (1) denying her request to continue the hearing to allow her to investigate Franz's estate property valuation, and (2) determining that the estate was ready to be closed without requiring Franz to present testimony and allowing Gessel to present testimony regarding property valuation. We disagree.

1.   Standard of Review

RCW 11.76.050 governs the taking of testimony in support of a final report and petition for distribution. It provides:

> Any person interested may file objections to the said report and petition for distribution, or may appear at the time and place fixed for the hearing thereof and present his or her objections thereto. The court may take such testimony as to it appears proper or necessary to determine whether the estate is ready to be settled, and whether the transactions of the personal representative should be approved.

RCW 11.76.050. Gessel argues that RCW 11.76.050 *required* the probate court to take valuation testimony to determine whether the estate was ready to be settled. We disagree. The statute states that the probate court "*may*" take testimony, and directs that the court may take "testimony *as to it* appears proper or necessary." RCW 11.76.050 (emphasis added). These provisions clearly provide that the probate court has discretion to take testimony, and do not require such testimony.

Accordingly, we review the probate court's denial of Gessel's request to take testimony on valuation under an abuse of discretion standard. " 'A trial court abuses its discretion by issuing manifestly unreasonable rulings or rulings based on untenable grounds, such as a ruling contrary to law.' ". *In re Estate of Toland*, 180 Wn.2d 836, 851, 329 P.3d 878 (2014) (quoting *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2nd 909, 919, 269 P.3d 860 (2013)).

2.    Denial of Request for Testimony

The probate court denied Gessel's request for a 30-day continuance to allow her time to conduct further investigation and acquire expert testimony regarding valuations of estate property. The probate court then determined that the evidence provided in Gessel's and her attorney's declarations did not demonstrate the need for an evidentiary hearing on the valuations of estate property. Satisfied by the personal representative's valuations, the probate court rejected Gessel's objection and approved the final report. We hold that the probate court did not abuse its discretion in making these rulings.

Gessel first argues that her request for a continuance was timely and that she asserted her objection to the valuation issues at her first opportunity. But Gessel misunderstands the probate court's concern. The probate court refused the continuance to allow for further investigation because Gessel's objection to valuation was without any evidentiary support, even though she had been aware of the potential valuation issue since the personal representative filed the estate inventory – including property values – eight months before the hearing. Because Gessel had eight months to gather evidence for the anticipated valuation dispute, the probate court ruled that there was not good cause for delaying the proceedings for further investigation. Under these circumstances, the probate court did not abuse its discretion in refusing to continue the hearing.

Second, Gessel argues that the probate court should have taken testimony to establish the challenged property values. If Gessel had provided *some* competent evidence that Franz's property values were inaccurate, the probate court may have had an obligation to consider further testimony. But Gessel provided nothing to show the probate court that additional evidence was necessary. Gessel was not qualified to offer credible testimony on the value of the real property

8

and trust property at issue, and she did not offer any other evidence or witnesses available to raise a credible challenge to Franz's valuation. Moreover, the probate court is permitted to rely on the values provided by the personal representative in the inventory and final report. *See In re Estate of Shaner*, 41 Wn.2d 236, 242, 248 P.2d 560 (1952) (party challenging the estate inventory has the burden of proof because the inventory is presumed to be correct). Under these circumstances, the probate court did not abuse its discretion in declining to consider further evidence from either Franz or Gessel.

Third, Gessel argues that her allegations of serious valuation irregularities should have prompted the probate court to continue the hearing for further investigation and to take testimony to establish the values. But again Gessel's unqualified and unsupported assertions were not enough to require the probate court to take such action. The probate court did not abuse its discretion in this respect.

Without credible evidence contradicting the inventory valuations, the probate court was under no obligation to take additional testimony before approving the final report. Therefore, we hold that the probate court did not abuse its discretion in approving the final report without taking testimony on the contested valuations of certain estate property.

C.    CALCULATION OF EQUALIZING LIEN

Gessel argues that the probate court erred in interpreting the will's equalizing lien provision to equalize Franz's and Gessel's total distributions under the will rather than equalizing only Franz's gift of Reese's primary residence and Gessel's gift of the trust interest. Under Gessel's proposed interpretation, the equalizing lien would not take into account Gessel's

substantial gift of the estate's liquid funds (amounting to $152,943.81), which would result in a larger share of the estate to Gessel. We hold that the probate court's interpretation was correct.

### 1. Standard of Review

RCW 11.76.050 provides that courts hearing a petition for distribution have authority to "make partition, distribution and settlement of all estates in any manner which to the court seems right and proper." A court's primary duty when construing a will is to give effect to the testator's intent. *In re Estate of Bergau*, 103 Wn.2d 431, 435, 693 P.2d 703 (1985). If possible, the court should determine this intent from the four corners of the will and the will must be considered in its entirety. *In re Estate of Mell*, 105 Wn.2d 518, 524, 716 P.2d 836 (1986). Only if the testator's intent is ambiguous will extrinsic evidence be admitted to explain and resolve the ambiguity. *Mell*, 105 Wn.2d at 524.

We review a probate court's distribution order to ensure that it is in accord with the testator's will and the applicable law. *In re Estate of Wegley*, 65 Wn.2d 689, 695, 399 P.2d 326 (1965). Where the facts are not in dispute, the interpretation of a will is a question of law, which we review de novo.[5] *In re Estate of Curry*, 98 Wn. App. 107, 112-13, 988 P.2d 505 (1999). Where there is a question of law that turns on disputed facts, the issue is reviewed as a mixed question of law and fact. *See Adams v. Great Am. Ins. Co.*, 87 Wn. App. 883, 886-87, 942 P.2d 1087 (1997).

---

[5] Franz cites *In re Estate of Elmer*, 91 Wn. App 785, 790, 959 P.2d 701 (1998), in which Division Three of this court reviewed for abuse of discretion the trial court's decision that under the language of the will the testator's predeceased child's daughter was entitled to receive her father's share of the estate. We do not follow *Elmer* because the authority it cites to support the abuse of discretion standard of review is not on point.

Here, the probate court heard argument only. Neither party provided extrinsic evidence of the testator's intent, nor did the probate court make any factual findings related to the testator's intent. On appeal, neither Franz nor Gessel argue that the will is ambiguous or rely on extrinsic evidence to support their respective interpretations. Accordingly, because the facts are not in dispute, we review the probate court's interpretation of the will de novo. *Curry*, 98 Wn. App. at 112-13.

2.    Interpretation of Will Language

The material provisions of Reese's will stated:

5.2    I give, devise and bequeath one-third of my estate consisting of the real property, cabin and storage building . . . and the adjoining undeveloped lot . . . to my daughter, JANICE MARIE SANGER, subject to one-half interest in the Well reserved for my residence, and subject further to an access easement along the north margin of the property devise to Janice Marie Sanger along the existing access road.

5.3    I give, devise and bequeath the real property, and primary residence . . . to my daughter, MARILYN ANN FRANZ.

5.4    I give, devise and bequeath my total share of the Jennie H. Rowe Property Trust pursuant to my power of appointment set forth in my deceased Mother's Last Will and Testament (Jennie H. Rowe) dated March 30, 1980 . . . to my daughter, BEVERLY JO GESSEL.

The total combined value of my bequest and/or devise to both Beverly Jo Gessel and Marilyn Ann Franz shall be divided by two and that amount shall be subtracted from the total value of Marilyn's interest in my estate, which amount shall be a lien in favor of Beverly Jo Gessel against my former primary residence with no interest, payable in full within six (6) months of my demise.

. . . .

5.6    I bequeath the remainder of my liquid funds to my daughter, BEVERLY JO GESSEL.

5.7    I bequeath the remainder of my estate to my surviving children to be divided equally between them. . . .

Clerk's Papers (CP) at 4-5.

11

Under these provisions, Sanger received a cabin and an adjoining lot, which Reese described as "one third of my estate." CP at 4. Franz received Reese's primary residence and Gessel received Reese's interest in a trust and the estate's liquid assets, which Reese apparently believed together represented the other two-thirds of her estate. In order to divide that two-thirds equally between Gessel and Franz, Reese included a provision for an equalizing lien in Gessel's favor against Franz's gifted property. Finally, Reese provided that any remainder of the estate would be divided equally among the children. Although the language is inartful, these provisions demonstrate that Reese's intent was to divide her estate equally among her children. [6]

If Gessel's gift of the estate's liquid assets is included in the equalization calculation, the three children will receive equal gifts. For example, assume that the primary residence gifted to Franz was worth $500,000, the trust property gifted to Gessel was worth $200,000, and the liquid assets gifted to Gessel totaled $150,000. The total of all these gifts would be $850,000, and half of that would be $425,000. Under paragraph 5.4, that $425,000 would be subtracted from Franz's gift, resulting in an equalizing lien in the amount of $75,000. This calculation would leave Franz with a total of $425,000 and leave Gessel with a total of $425,000: $350,000 in gifts plus the $75,000 lien. And assuming Reese correctly valued the cabin gifted to Sanger at one-third of the total estate, Sanger also would be left with $425,000 in value. This result would reflect Reese's intent.

---

[6] Gessel points out that there was no attempt to equalize Sanger's share of the estate and therefore, the testator did not intend to divide her estate between her three daughters. But this ignores the fact that the will left Sanger one-third of the estate rather than a fixed amount.

On the other hand, if Gessel's gift of the estate's liquid assets is not included in the equalization calculation, Gessel's total gifts will be greater than Franz's gifts. Using the example in the previous paragraph, without including the estate's liquid assets the total of all gifts subject to equalization would be $700,000. Half of that amount would be $350,000, which would be subtracted from Franz's gift to create an equalizing lien in the amount of $150,000. This calculation would leave Franz with $350,000 and leave Gessel with a total of $500,000: $350,000 in gifts plus the $150,000 lien. And again assuming that Sanger's cabin was worth one-third of the total estate, Sanger would be left with $425,000 in value – more than Franz but less than Gessel. This result would defeat Reese's intent.

As these examples demonstrate, equalizing the value of the total distributions to Gessel and Franz serves Reese's overall objective to divide her estate equally among her three daughters. Paragraph 5.2 describes Sanger's gift as one-third of the estate. Reese's three daughters were the only beneficiaries of the will. If Reese intended to gift one-third of her estate to Sanger, and Gessel and Franz received an equal division, then the three daughters would each receive one-third of the estate – an equal share. But if Gessel's gift of liquid funds is excluded from the equalization, Gessel will receive more than one-third of the estate and Franz will receive less than one-third.

Not only does including Gessel's liquid assets gift in the equalizing calculation serve Reese's intent, the plain language of paragraph 5.4 supports this interpretation. Paragraph 5.4 uses a broad, unqualified description of the gifts subject to equalization, "[t]he *total combined value* of my bequest and/or devise to *both* . . . Gessel and . . . Franz." CP at 4. (Emphasis

13

added.)  The phrase "total combined value" unambiguously refers to all gifts to Gessel and Franz, including Gessel's gift of liquid funds.  CP at 4.

Gessel argues that the gift of liquid funds to her in paragraph 5.6 should not be included in the equalization because (1) the equalization provision is contained in paragraph 5.4, which deals only with a gift of trust property to Gessel; (2) paragraph 5.4 does not mention the gift of liquid funds in paragraph 5.6; and (3) paragraph 5.6 does not mention the equalization provision.  These arguments are unpersuasive.

The fact that paragraph 5.4 only includes Gessel's gift of trust property is immaterial because paragraph 5.4 is not a self-contained provision.  It obviously requires reference to paragraph 5.3, which describes Franz's gift.  And the fact that paragraph 5.4 makes no reference to paragraph 5.6 and vice versa also supports the alternate argument.  For example, it might make sense to refer to specific provisions or gifts for a partial equalization (such as an equalization of real property or heirlooms, etc.), but where the testator intended to equalize the total distributions of the beneficiaries, no references would be required.

The organization of the will is awkward in that the equalization lien is provided for in the middle of the various disposition provisions rather than at the end, as one might expect.  However, based on Reese's intent to divide her estate equally and the plain language of the equalizing lien in paragraph 5.4, we hold that the value of all Gessel's gifts must be included in calculating the equalization lien.  Accordingly, we affirm the probate court's interpretation of the will.

D.    AUTHORIZATION OF ATTORNEY FEES

Gessel argues that the trial court erred in retroactively authorizing attorney fees paid in violation of her request for advance notice. She further argues that the probate court should have disgorged the fees paid to counsel as a remedy for failing to give the required advance notice. We disagree.

Franz incurred $12,074.64 in attorney fees in her capacity as personal representative of the estate. Using estate assets, Franz paid $7,867.14 of that amount as the fees came due, which left a remaining balance of $4,207.50 at the time of the final report. Despite Gessel's request for advance notice of intent to pay attorney fees in her request for special notice under RCW 11.28.240, Franz paid the $7,867.14 in fees without providing advance notice to Gessel. In the final report and petition for decree of distribution, Franz requested that the court find that the total amount of attorney fees was reasonable and approve payment of the fees. The trial court approved the prior payment.

Gessel contends that the personal representative violated a statutory duty and court rule by failing to provide advance notice of her intent to pay attorney fees. Assuming without deciding that Gessel is correct, the trial court did not error in approving the fees and refusing to disgorge them. The purpose of advance notice is to give an interested person the opportunity to challenge the reasonableness of the fees before the estate is out the money. Here, there is no allegation of unreasonable fees. The probate court provided Gessel an opportunity to review the paid and proposed attorney fees. After reviewing the invoices, Gessel agreed that the fees were reasonable.

Where the alleged procedural violation caused no harm to the estate or to Gessel, disgorgement would be an unreasonable remedy. Gessel argues that without the threat of disgorgement for the procedural violation, a personal representative or attorney can ignore the advance notice requirement with impunity. But the estate is adequately protected from unreasonable fees paid to the attorney because the attorney will be required to reimburse fees found to be unreasonable and the personal representative will be secondarily liable to the estate if the attorney fails to make reimbursement. *In re Estate of Peterson*, 12 Wn.2d 686, 732, 123 P.2d 733 (1942). We affirm the probate court's attorney fee ruling.

E.    ATTORNEY FEES ON APPEAL

Franz, in her capacity as personal representative of the estate, requests an attorney fee award on appeal. We may, in our discretion, award reasonable attorney fees to any party to be paid by any other party to the proceedings or from the estate assets. RCW 11.96A.150. We may order attorney fees to be paid in such amount and in such manner as we determine to be equitable. RCW 11.96A.150.

Here, Gessel's notice argument was not completely without merit and Franz did violate the RCW 11.28.240(1) notice requirement. Further, interpretation of the will presented a debatable issue because of the somewhat awkward language. Therefore, in the exercise of discretion we deny Franz's request for reasonable attorney fees.

We affirm, and deny Franz's request for reasonable attorney fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

WORSWICK, P.J.

LEE, J.